No. 24978

Donald D. Dixon, Joseph Washington Evans, Harold Fishman, Dallas C. Hiatt, Harry W. Odil, and Joseph A. Wolfe, individually and as representatives of a class v. Herbert A. Zick, Wendell E. Bryan, Albert A. Sutton, Harold J. Kendrick, and Richard A. Barnes, and their respective successors in office, as members of the Colorado State Board of Optometric Examiners, and The Colorado State Board of Optometric Examiners.

(500 P.2d 130)

Decided August 14, 1972.        Rehearing denied September 5, 1972.

Rothgerber, Appel & Powers, Norman R. Helwig, Ira C. Rothgerber, Jr., for plaintiffs-appellants.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, William Tucker, Assistant, Clifton A. Flowers, Assistant, for defendants-appellees.

Sheldon E. Friedman, for The National Association of Optometrists and Opticians, Inc., amicus curiae.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is a sequel to *Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287, decided by this court on April 29, 1968. The plaintiff-appellants here are licensed optometrists and the defendant-appellees are members of the Colorado State Board of Optometric Examiners and the Board itself.

The plaintiffs filed a class action (1) to permanently enjoin the Board from enforcing Regulation No. 11 and (2) for a declaratory judgment that Regulation No. 11 is unconstitutional. The trial court, finding that irreparable injury would otherwise result to the plaintiffs, granted a preliminary injunction restraining the Board from enforcing Regulation No. 11. C.R.S. 1963, 3-16-5 and C.R.C.P. 106. This court on certiorari review affirmed the trial court. *State Board v. Dixon, supra.*

Upon remand the Board filed an amended answer asserting the constitutionality of the regulation and statute and a counterclaim for a permanent injunction against plaintiffs to enjoin their violation of Regulation No. 11. Upon hearing, the court found that the Board had the power to issue the regulation and that it was constitutional. The court then granted a permanent injunction. Plaintiffs are now here on appeal seeking a reversal of the later judgment.

The Board, by virtue of the purported authority granted it by C.R.S. 1963, 102-1-7(2), promulgated Regulation No. 11, which states:

"No optometrist shall conduct the practice of his profession in or on premises where a commercial or mercantile establishment is the primary business being conducted."

The plaintiffs, individually and the class they represent, conduct the practice of their profession in retail stores where general merchandise is sold and are admittedly in direct violation of Regulation No. 11.

The National Association of Optometrists and Opticians, Inc., as *amicus curiae,* have filed briefs in support of the plaintiffs' position. Although the plaintiffs have directed their constitutional attack primarily against the offending regulation they have challenged the underlying statute on the basis that "the statutory language of delegation of Chapter 102, C.R.S. 1963, is impermissively overbroad."

Because we find that the Board exceeded the powers granted to it in the Act, we do not reach the plaintiffs' arguments questioning the validity of the statute. The sole issue is whether the Board exceeded its delegated authority in issuing Regulation No. 11.

I.

The public policy of the State of Colorado is set forth in C.R.S. 1963, 102-1-1:

"The practice of optometry in the state of Colorado is hereby declared to affect the public health and safety and is subject to regulation and control in the public interest. Optometry is hereby declared to be a learned profession and it is further declared to be a matter of public interest and

concern that the practice of optometry as defined in this article be limited to qualified persons admitted to the practice of optometry in the state of Colorado under the provisions of this article. This article shall be liberally construed to carry out these objects and purposes in accordance with this declaration of policy."

The General Assembly created the State Board of Optometric Examiners to carry out the public policy and the terms of the Act. 102-1-6. By C.R.S. 1963, 102-1-7, the Board was given power to

"(2) Prescribe rules and regulations for conducting and administering examinations of applicants for licensing as optometrists and to carry out and make effective the provisions of this article."

Additional powers granted to the Board include the examination, licensing, conduct of hearings to revoke, suspend, deny, issue, reissue, or reinstate licenses previously granted.

Sections of the Act relevant to a discussion of the issues raised in this litigation include sections 5, 16, 17, 22 and 24.

Section 5(1) defines "proprietor" and proscribes the activities of one coming within the definition of the term:

"(1)(a) The term 'proprietor,' as used in the article, includes any person, group, association, or corporation not licensed under this article who:

"(b) For financial gain employs optometrists in the operation of an optometric office; or

"(c) Places, "directly or indirectly, in possession of an optometrist such optometric materials or equipment as may be necessary for the operation of an optometric office on the basis of any fee splitting, income division, profit sharing, or any similar agreement, or on any basis which has the effect of any such agreement, but the term 'proprietor' does not include the bona fide seller of optometric equipment or material secured by chattel mortgage, conditional· sales contract, or other title retention agreements, or the bona fide leasing of such equipment by the manufacturer or by his franchised dealer; or

"(d) Under the guise of a rental percentage lease or sublease or other leasing or rental arrangement, participates in the direction and control of a licensee's practice and business or in the receipts or profits accruing therefrom, but a bona fide percentage sale lease basing the rental of the premises let upon a percentage of gross income of not to exceed the reasonable, going rate for like quarters and location, as determined by the board after investigation, shall not be deemed an avoidance of the provisions of this section. Certified copies of all such leasing and rental arrangements and renewals thereof shall be filed with the board by the licensee within thirty days after execution."

Causes for revocation of licenses or refusal to renew are set forth in section 16. Pertinent to the issue here are subsections (1)(g) which empowers the Board to revoke a license for "[d]isobedience to the lawful rule or order of the board or its officers;" (1)(i) which proscribes,

"[p]racticing optometry as the partner, agent, or employee of, or in joint venture or arrangement with any proprietor, as defined in section 102-1-5, or with any person who does not hold a license to practice optometry within this state, except as permitted in section 102-1-22. Any licensee holding a license to practice optometry in this state may accept employment from any person, partnership, association, or corporation to examine and prescribe for the employees of such person, partnership, association, or corporation;"

(1)(j) states the revocation or refusal to renew may be based upon "[i]mmoral, unprofessional, or dishonorable conduct. Violation of any provision of section 102-1-7 shall be deemed unprofessional conduct;"

. . . .

and (1)(l) makes fee splitting a basis for revocation.

Section 17 enumerates "General prohibitions" the violation of any provision of which constitutes "unprofessional conduct" and is a ground for revocation or refusal to renew a license.

General prohibitions enacted by the General Assembly (102-1-17) make it unlawful for any person, firm or

corporation:

"(5) To employ or offer compensation or merchandise of value to any salesman, runner, patient, or other person as an inducement to secure his services or assistance in the solicitation of patronage for the performing, rendering, supplying, or selling of optometric services or ophthalmic materials or devices."

None of the practices proscribed relate directly to the *location* of the premises in which or on which the licensee shall conduct the practice of his profession (or to the subject matter of Regulation No. 11).

The civil and criminal sanctions for violations by licensees are found in sections 21 and 24. Section 21 authorizes injunctive relief against any person violating any provision of the article "or any lawful rule or regulation issued under this article." Section 24 makes anyone who violates "any of the provisions of this article, guilty of a misdemeanor and subject to a fine or imprisonment or to both a fine and imprisonment."

## II.

The regulation of the practice of optometry by the General Assembly is constitutionally permissible under the police power because like other learned professions, it affects the public health, safety and welfare. In carrying out this responsibility, the law enacted must reasonably bear upon or relate to the health, safety and welfare of the public. *See People v. Giordano,* 173 Colo. 567, 481 P.2d 415. By the same token any regulations by the administrative body charged with the responsibility of implementing the legislative act must likewise reasonably relate to the public health, safety and welfare.

A regulation issued by an administrative body, in order to be valid, must be within the scope and objects of the statutory delegation of authority which underlies the regulation. We return now to examine the Optometry Act (Chapter 102) to test Regulation No. 11 by these standards.

This court has adopted from *Field v. Clark,* 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294, this criteria for determining

the constitutionality of the delegation of authority by the legislature:

"The true distinction . . . is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

*See also Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621.

Applying this test, then, we must determine from the Act whether (1) the legislation placed a limitation upon the place where a licensed optometrist may carry on the practice of his profession; and (2) whether the promulgation of Rule No. 11 was done in the exercise of the Board's delegated authority to carry out the terms of the Act.

The source of the Board's rule making power is C.R.S. 1963, 102-1-7, quoted above. If Rule 11 is to survive the test, justification must be found in the general delegation in subparagraph (2). The provision gives the Board power ". . . to carry out and make effective the provisions of this article."

The Board argues that Regulation No. 11 was promulgated to make effective the statutory provisions which are set out in Part I of this opinion. None of the general prohibitions in section 17 relate to the geographic location of the place where the practice of the profession is conducted, nor do the proscriptions of Section 5(1). On the contrary, all of the provisions are directed to the conduct of the licensee or a "proprietor." Section 5. Section 5(1)(d) relates to the leasing or subleasing "or other leasing or rental arrangement" and, perhaps, comes the closest to an attempt to regulate the premises of any provision of the Act. However, it is directed, as is subparagraph (5)(1)(c), to fee splitting, income division or profit sharing.

No reason has been suggested, and we can find none, as to why those conducting a commercial or mercantile business should be singled out by the Board from the broad class of potential landlords from whom a licensed optome-

trist may not lease space in which to practice his profession. There is no evidence that there is, in a rental relationship between an optometrist and a commercial or mercantile establishment, any inherent evil or a propensity to violate the statutorily proscribed conduct of an optometrist or that the conduct of the practice on such premises affects in any manner the public health, safety and welfare. We can find no reasonable basis for Rule 11 in the Act.

The trial court based its decision that Regulation No. 11 was constitutional primarily on *Silverman v. Board of Registration of Optometry,* 344 Mass. 129, 181 N.E.2d 540. We have compared the Massachusetts Act relating to "Registration of Certain Professions and Occupations," *Mass. General Laws Annot.,* Ch. 112, with C.R.S. 1963, 102-1-1, *et seq.* (Optometry), and find that there are sufficient conceptual differences between the two Acts in reference to the delegation of legislative power alone to make the *Silverman* opinion inapplicable here. Although the regulation ruled on in *Silverman* was identical with Regulation No. 11, the differences in the statutory language of the Massachusetts Act, particularly that relating to delegation of power, are such that the *Silverman* opinion does not furnish proper guidelines for the resolution of issues which turn on the different language found in the Colorado Act.

Also, we note in a later decision, a substantial change in the philosophy of the Supreme Judicial Court of Massachusetts. *Milligan v. Board of Registration in Pharmacy,* 348 Mass. 491, 204 N.E.2d 504. Although *Milligan* did not specifically overrule *Silverman,* it indicates such a pronounced change of direction that we do not believe that *Silverman* now represents the law of Massachusetts. In any event, we are not persuaded that we should follow *Silverman.*

The other arguments advanced in support of the judgment are without merit.

The judgment is reversed and remanded for further proceedings not inconsistent with the views expressed herein.

MR. JUSTICE GROVES not participating.