The Honorable Ruben A. Valdez Speaker of the House of Representatives 242 State Capitol Building Denver, Colorado
Dear Mr. Speaker:
QUESTION PRESENTED AND CONCLUSION
Is it an unlawful delegation of legislative authority to statutorily mandate settlement by binding arbitration for a state governmental unit, a school district, a local government or other governmental entity?
 Legislation permitting binding arbitration of grievances would not constitute unlawful delegation of legislative authority. However, binding arbitration of "interest" disputes may violate the Colorado constitution.
ANALYSIS
I have prepared this informal opinion for your consideration.
The current case law appears to allow for a delegation of legislative authority by mandate of binding arbitration under at least some circumstances. This assumes as a first prerequisite that proper enabling legislation authorizing collective bargaining and binding arbitration has been enacted. Fellows v. LaTronica, 151 Colo. 300, 377 P.2d 547 (1962) has been repeatedly cited as authority for the proposition that in the absence of enabling legislation, public sector collective bargaining and therefore, necessarily, binding arbitration, would be invalid as an improper delegation of governmental responsibility. However, the concurring opinion of Justice Pringle in Fellows, supra, and the subsequent case of Rocky v. School District No. 11, 508 P.2d 796
(Colo.App. 1973), indicate that in a broader context, collective bargaining by a school district or other governmental entity may or may not be an improper delegation, depending on the language and nature of the delegation. Thus, with proper legislative authority and contractual language, arbitration in the public sector may be permissible in Colorado under at least some circumstances and not an unlawful delegation of legislative authority.
Colorado law recognizes the usefulness of arbitration in avoiding costly and protracted litigation where parties to a private contract have agreed to submit disputes arising under the contract to binding arbitration. The case law has upheld awards as binding on the parties, and such awards have been held subject to judicial review only upon a showing of fraud or similar misconduct.School District No. 6 v. Alfred Watts Grant Associates, 156 Colo. 328, 331, 399 P.2d 101 (1965); InternationalService Ins. Co. v. Ross, 169 Colo. 451, 465, 457 P.2d 917 (1969); and generally, In Re Compulsory Arbitration, 9 Colo. 629, 21 P. 474 (1886). Additionally, article XVIII, section 3 of the Colorado Constitution provides that the General Assembly may pass laws to decide differences by arbitrators, and Rule 109 of the Colorado Rules of Civil Procedure establishes a framework for arbitration.
The Colorado Constitution, article V, section 35, prohibits delegations of municipal power as follows:
 The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or to perform any municipal function whatever.
Although the Constitution does not address the question, it is clear that an improper delegation of legislative authority would be equally invalid. Colorado Constitution, article V, section 1; Colorado Anti-Discrimination Commission v. Case, 151 Colo. 235, 380 P.2d 34
(1963). However, the Fellows and Rocky cases, supra, make it clear that both municipal and legislative powers may be delegated, provided that the delegation is properly authorized and not in derogation of essential governmental, as opposed to propriety, functions. See: Bettcher v. Stateex rel. Colorado General Hospital, 140 Colo. 428, 344 P.2d 969 (1959) andOlinger v. People, 140 Colo. 397, 344 P.2d 689 (1959). Moreover, the Colorado courts have distinguished between a delegation of the power to make the law (involving discretion as to what the law should be) and a delegation of authority or discretion as to how the law shall be executed or enforced. The determination of a framework for the law's operation or of facts which invoke the law's command has been held to be proper delegations provided that proper standards exist to guide and control the actions of the agent on whom the delegation is conferred.Olin MathiesonChem. Corp. v. Francis, 134 Colo. 160, 301 P.2d 139 (1956); People ex relDunbar v. Giordano, 173 Colo. 567, 481 P.2d 415 (1971); and Dixon v. Zick,179 Colo. 278, 500 P.2d 130 (1972).
Since Colorado has never had proper enabling legislation, the question of whether binding arbitration would be an unlawful delegation of authority has not been resolved by the Colorado courts. The Colorado Supreme Court decision in Nordstrom v. Hansford, 164 Colo. 398, 435 P.2d 397 (1967), held that even in the absence of enabling legislation, the use of a hearing panel in a discharge dispute under the Teacher Tenure Act was not in violation of article V, section 35, because the panel's findings were only recommendations and not binding on the district; but no further authority exists in Colorado.
Thus, one must also look to other jurisdictions which have enacted legislation governing public sector bargaining to determine the propriety of binding arbitration in the public sector in Colorado. The decisions of the courts are not uniform but lead to the following conclusions:
1. Statutory and contractual requirements to submit grievances (disputes arising out of a contract) to binding arbitration in the limited area of public safety employees, namely police and firefighters, have been uniformly approved by the courts and have been held not to constitute an unlawful delegation of legislative authority.
The case law distinguishes this type of arbitration from "interest arbitration" (disputes arising out of the making of a contract) and reasons that the submission to arbitration of grievances does not constitute an unlawful delegation because such arbitration deals only with the exercise of a governmental body's power and not with a delegation of power to make the law. Erie Firefighters Local No. 293 v.Gardener, 406 Pa. 395, 178 A.2d 691, 695 (1962).
Thus, in Local 1518 AFSCME v. St. Clair's County Board of Commissioners,204 N.W.2d 269, 82 L.R.R.M. 2927, 2929 (Mich. 1972), the Supreme Court of Michigan enforced a statutory provision which required police and firefighters to submit grievances to arbitration, noting that the public policy behind the law evinced an:
 overriding public policy favoring peaceful and expeditious resolution of labor disputes involving firemen and policemen. . . .
The court upheld the law with the observation that:
 courts in other states have ruled that it is not an unlawful delegation of the municipal authority to include a provision for compulsory grievance arbitration in a collective bargaining agreement between a union and a municipality.
Thus, I conclude that legislation providing for binding arbitration of grievances involving police and firefighters would not constitute an unlawful delegation of legislative authority.
2. The case law generally supports the validity of binding arbitration of public employee grievances generally, even beyond the public safety category. See: Division 85, Amalgamated Trans. Union v. Port Author. ofAllegheny County, 417 Pa. 299, 304, 305, 306, 208 A.2d 271 (1965) andLocal 1226, Rhinelander City Employees, AFSCME v. City of Rhinelander,35 Wis.2d 209, 151 N.W.2d 30, 65 L.R.R.M. 2793 (1967). However, some authority contradicts this position, especially in the absence of specific enabling legislation (Hamilton Local Board of Education v.Arthur, 84 L.R.R.M. 2468 (Ohio Ct. of Appeals 1973)) or where the effect of arbitration would be to make new laws (City of Sioux Falls v.Firefighters Local 814, 85 L.R.R.M. 2066 (S. D. 1973)).
Federal labor law favors grievance arbitration where the parties have agreed by the terms of their contract to submit disputes to binding arbitration. See Labor Management Relations Act section 203(d) and section 301, 29 U.S.C.A. section 173(d) and section 185. This policy recognizes the quid pro quo when a collective bargaining agreement provides for binding arbitration in exchange for an obligation not to strike. E.g.,Bethlehem Mines Corp. v. United Mine Workers of America, 375 F. Supp. 980
(D.C. Pa. 1974). See generally: Dunellen Board of Education v. DunellenEducation Association, 311 A.2d 737, 85 L.R.R.M. 2131 (1973); Bd of Ed.v. Associated Teachers, 30 N.Y.2d 122, 331 N.Y. S.2d 17, 282 N.E.2d 109
(1972); and Antonopoulou v. Beame, 32 N.Y.2d 126, 343 N.Y. S.2d 346, 83 L.R.R.M. 3092 (1973).
Thus, subject to the limitations discussed in the third portion of this opinion, I conclude that is is likely that enabling legislation requiring binding arbitration of public employee grievances generally would not constitute an unlawful delegation of legislative authority.
3. Extensive decisions have been rendered upholding the validity of interest as well as grievance arbitration, but there is contrary authority, and the cases have been limited primarily to statutes providing for binding arbitration of disputes involving public safety workers only.
Most of the existing binding arbitration statutes dealing with the public sector and therefore, most of the cases, apply only to police and firefighter bargaining units. See, e.g., City of Biddeford v. BiddefordTeachers Association, 304 A.2d 387, 83 L.R.R.M. 2098 (Me. 1973) (which excluded from binding arbitration teachers' salaries, pensions and insurance); Local 1518 AFSCME v. St. Clair County Board ofCommissioners, supra; City of Providence v. Fire Fighters Local 799,305 A.2d 93, 84 L.R.R.M. 2197 (R. I. 1973); and City of Sioux Falls v.Fire Fighters Local 814, supra.
The restricted scope of the existing statutes is equally supportive of the proposition that compulsory binding arbitration of interest disputes is proper only with respect to the limited category areas of public safety employees. For example, Massachusetts, Minnesota, Oregon, South Dakota, Texas and Washington restrict binding arbitration to police and firefighters.
Where binding arbitration has been mandated by statute, court decisions have noted with favor the importance attached to the general right to strike established in federal labor law and particularly the Labor Management Relations Act section 203(d), 29 U.S.C.A. section 173(d). Those states which have enacted binding arbitration provisions have generally enacted such provisions only when the legislation expressly prohibited strikes, work stoppages, or similar concerted action by public employees. Such legislation has been established to avoid labor disputes in the public sector, and the courts have generally approved the use of binding arbitration as a quid pro quo for the legislative prohibition of strikes in the sensitive area of public safety functions of government. See Wyoming ex rel. Firefighters, Local 946 v. City ofLaramie, 437 P.2d 295, 68 L.R.R.M. 2038 (Wyoming 1968); Long IslandCollege Hospital v. Catherwood, 283 N.Y. S.2d 249, 251, 66 L.R.R.M. 2360 (1967); and Firefighters Union, Local 1186, etc. v. City of Vallejo,116 Cal.Rptr. 507, 526 P.2d 971 (1974).
These and other decisions have narrowly construed the imposition of binding arbitration, by restricting the scope of arbitration clauses to issues which are proper subjects of negotiations as defined by the terms of the bargaining statutes themselves (Firefighters Union, Local 1186,etc. v. City of Vallejo, supra), or by making the arbitrator's award binding only in particular areas or not at all (City of Biddeford v.Biddeford Education Association, supra, and Joint School District No. 8,City of Madison v. Wisconsin Relations Bd., 37 Wis.2d 483, 155 N.W.2d 78,80-81 (1967)).
Binding arbitration has been disapproved in a series of cases which have denied requests to bind a governmental body to an arbitrator's award when the award required the body to act contrary to the civil service law or to actually raise taxes to meet salaries or similar demands. See: IAFFLocal 1038 v. Allegheny County, 299 A.2d 60 (Pa. 1973), and DearbornFire Fighters Union Local No. 412 IAFF v. City of Dearborn,42 Mich. App. 51, 201 N.W.2d 650 (1972). However, by far the greater number of courts have followed the ruling in City of Warwick RegularFiremen's Ass'n, 106 R. I. 109, 256 A.2d 206, 211 (1969), which upheld an arbitration's award based on the provision of standards for the decision and judicial review of whether the decision was capricious, arbitrary, or in excess of the delegated authority. In Warwick, binding arbitration was upheld as a proper exercise of the police power because of the essential nature of the firefighters' services to the public safety and welfare. Accord: Dearborn Fire Fighters Local No. 412 IAFF v. City of Dearborn,supra.
Similar reasoning led to the decision in Long Island College Hospital v.Catherwood, supra, which upheld compulsory arbitration between unions and private nonprofit hospitals under the New York labor law. There the court recognized that the interest of the legislature was to avoid disputes because the business of the nonprofit hospital was "so affected with the public interest as to require continued and uninterrupted service to the public." A similar holding found that the statute involved did not violate due process because adequate standards existed, and the award was subject to judicial review.Mount St. Mary's Hospital of Niagara Falls v.Catherwood, 311 N.Y. S.2d 863, 26 N.Y.2d 493, 260 N.E.2d 508 (1970). In fact, in all decisions upholding arbitration statutes, provisions for judicial review have been required, together with adequate standards for the court's review as well as for the arbitrator's initial award. See:Coral Gables Employees' Ass'n., 289 So.2d 453, 85 L.R.R.M. 2200 (Fla.App. 1974). In Colorado, as is clear from the LaTronica case, supra, there can be no binding arbitration of public sector disputes without proper guidelines. See: People ex rel. Dunbar v. Giordano, supra.
In the states of Wisconsin and Michigan, which both have extensive public sector labor relations statutes, eligibility for use of arbitration is confined to county and city law enforcement and firefighting personnel. The statutes provide for interest arbitration and provide extensive guidelines for the arbitrator's decision, stating that he shall give weight to the lawful authority of the employer, stipulations of the parties, ability to pay, cost of living, comparisons with other employees in the public and private sectors doing similar work, and such other factors which are normally or traditionally taken into consideration in determining the wages, hours and conditions of employment in the private and public sectors. The Massachusetts comprehensive bargaining bill, which covers state, county, and municipal employees (including teachers, police and firemen), limits "final offer" arbitration procedures to police and firefighters and provides virtually identical standards. The same is the case in Oregon.
Thus, I conclude that in enacting any collective bargaining statute for the State of Colorado, careful consideration should be given to the limited scope of the decisions and statutes of other jurisdictions before extending binding arbitration to interest disputes, and assuming that broad arbitration provisions are desired, the legislature should hesitate before extending interest arbitration beyond the category of police and firefighters to the more general area of other public employees.
4. A statute requiring all disputes to be subject to binding arbitration would be of questionable validity and would in all probability constitute an unlawful delegation of legislative authority. Interest arbitration concerning public employees involved in activities not directly affecting public safety would be difficult to justify. The cited decisions, supra, are in conflict, and the courts have carefully scrutinized the policy reasons for legislation mandating binding arbitration. Mount St. Mary'sHospital of Niagara Falls v. Catherwood, supra.
Only Wyoming seems to reason that without question general prohibitions against strikes can be offset by binding arbitration without constituting an unlawful delegation of authority; but the decision, Wyoming ex rel.Firefighters, Local 946 v. City of Laramie, supra, spoke only to a firefighters bargaining and arbitration statute, and even then, the court approved the law only because it contained adequate standards for review.
In conclusion, it is my opinion that Colorado could enact legislation requiring binding arbitration of grievances for police, firefighters, and possibly other public employees. Such legislation would not constitute an unlawful delegation of legislative authority, provided that the legislation set forth proper standards for selection of the arbitrator and for the exercise of his discretion, and adequate review procedures for the courts to assess the validity of an award. Binding arbitration of interest disputes involving public safety employees could probably be validly mandated, recognizing binding arbitration as a valid quid proquo for the prohibition against strikes in an area where there is a recognized need for uninterrupted essential services. However, in view of the conflict in the case law, I conclude that requiring binding arbitration of all disputes in the public sector would be of questionable legality and might well constitute an unlawful delegation of legislative authority.
In response to your request for alternatives to binding arbitration in the event that binding arbitration itself would be improper, I would suggest that advisory arbitration, mediation or fact finding would facilitate the purposes of the proposed legislation and would not interfere in any way with the governing body's legislative authority.
SUMMARY
Legislation permitting binding arbitration of grievances would not constitute unlawful delegation of legislative authority. However, binding arbitration of "interest" disputes may violate the Colorado Constitution.

 Very truly yours,
 J.D. MacFARLANE
 Attorney General
 SINCE ITS ISSUANCE THIS
 OPINION LETTER WAS ADOPTED
 AS A FORMAL OPINION OF THE
 ATTORNEY GENERAL BY ATTORNEY
 GENERAL J.D. MacFARLANE
LABOR RELATIONS
EMPLOYEES, PUBLIC
TEACHERS

Colo. Const. art. V, secs. 1 and 5
LEGISLATIVE BRANCH House of Representatives HIGHER EDUCATION, DEPT. OF EDUCATION, DEPT. OF AFFAIRS, LOCAL, DEPT. OF
Legislation permitting binding arbitration of grievances would not constitute unlawful delegation of legislative authority. However, binding arbitration of "interest" disputes may violate the Colorado constitution.