The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jean ROSBURG and Barbara Parker, Defendants–Appellants.

No. 89SA458.

Supreme Court of Colorado, En Banc.

Feb. 4, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Sherrie D. Vincent, James M. Humes, Asst. Attys. Gen., Regulatory Law Section, Denver, for plaintiff-appellee.

Derry Beach Adams, Sears & Associates, Colorado Springs, for defendant-appellant Jean Rosburg.

Edward A. Gleason, Brian G. Eberle, Colorado Springs, for defendant-appellant Barbara Parker.

Justice MULLARKEY delivered the Opinion of the Court.

This case involves an appeal of a trial court's order permanently enjoining appellants Jean Rosburg and Barbara Parker from practicing midwifery without a license as prohibited by sections 12–36–106(1)(f) and 12–36–106(2), 5 C.R.S. (1985).[1] The midwives argued to the trial court that section 12–36–106(1)(f) unconstitutionally infringed the right of privacy of pregnant women to choose their method of childbirth and that the section was unconstitutionally vague. The trial court ruled that the midwives did not have standing to assert the privacy right of pregnant women [2] and that section 12–36–106(1)(f) was not unconstitutionally vague. The midwives appealed to this court pursuant to section 13–4–102(1)(b), 6A C.R.S. (1987).

On appeal the midwives again contend that they have standing to assert pregnant women's constitutional right to privacy and that section 12–36–106(1)(f) violates pregnant women's privacy right. Alternatively, the midwives argue that the classification of licensed nurse-midwives versus lay midwives created by section 12–36–106(1)(f) violates the midwives' right to equal protection of the law. The midwives also argue on appeal that section 12–36–106(1)(f) is unconstitutionally vague.

We agree with Rosburg and Parker that they have standing in this case to assert the privacy right of pregnant women. We disagree, however, that the prohibition against practicing midwifery without a license infringes a privacy right of pregnant women. We hold that section 12–36–106(1)(f) does not violate the midwives'

---

1. Section 12–36–106(1)(f) specifies that the "practice of midwifery except services rendered by nurse-midwives licensed [pursuant to the Nurse Practice Act] and certified by the American college of nurse-midwives" constitutes the practice of medicine. Section 12–36–106(2) prohibits practicing medicine without a license.

2. No pregnant women have been parties to this case.

equal protection right because the prohibition of lay midwifery bears a rational relationship to the state's legitimate interest in protecting the health of the pregnant woman and her child. We also hold that section 12–36–106(1)(f) is not unconstitutionally vague.

## I.

▬ To have standing to assert the rights of third parties not before the court, the parties before the court must demonstrate injury to themselves sufficient to guarantee concrete adverseness. *People v. Seven Thirty–Five East Colfax, Inc.,* 697 P.2d 348, 368 (Colo.1985); *State Bd. for Community Colleges v. Olson,* 687 P.2d 429, 435 (Colo.1984); *Augustin v. Barnes,* 626 P.2d 625, 628 (Colo.1981). In addition, at least one of the following factors must be present: (1) a substantial relationship between the parties before the court and the third parties; (2) the difficulty or improbability of the third parties in asserting an alleged deprivation of their rights; or (3) the need to avoid dilution of third-party rights in the event that standing is not permitted. *Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 368; *Olson,* 687 P.2d at 435; *Augustin,* 626 P.2d at 628. These factors function as prudential limitations on third-party standing. The parties purporting to assert the rights of the parties not before the court also must be able to show that "the particular constitutional . . . provision underlying the claim creates a right or interest [in the parties not before the court] that has been arguably abridged by the challenged governmental action." *Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 368–69 n. 26 (quoting *Olson,* 687 P.2d at 435).

▬ The standing of a vendor of goods or services to assert the constitutional rights of customers where the challenged statutory sections are addressed to the vendor is well-established. *See, e.g., Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 368. The injury-in-fact required to ensure concrete adverseness is satisfied in such situations because the legal duties created by the challenged statutory sections are addressed to the vendors. The vendor therefore must choose between conforming to the statute, with consequent economic injury, or disobeying the statute, with possible civil or criminal sanctions. *Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 368 (discussing *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451). Thus, Rosburg and Parker, as the vendors of their midwife services, are sufficiently adverse to assure effective presentation of the issues. *Id.* at 368 (citing *Olson,* 687 P.2d at 440).

All three of the prudential limitations placed on third-party standing also are present in vendor-customer cases such as this. In these cases, the constitutional rights of the customers are "inextricably bound up" with the activity of the vendor prohibited by the statute. *Id.* at 368 (quoting *Olson,* 687 P.2d at 440). Because the challenged statute imposes a duty on the vendor and not the customer, it is improbable that the customers will assert the alleged deprivation of their rights. Moreover, this court previously has held that in such cases "the danger that the constitutional rights of third parties would be diluted or adversely affected should [the vendor's] challenge fail is sufficient to confer standing upon the [vendor] to assert the rights of its customers." *Id.* at 368 (citing *Carey,* 431 U.S. at 684, 97 S.Ct. at 2015).

The crucial issue is whether Rosburg and Parker can show, for the purpose of third-party standing, that the alleged injury to pregnant women is to a legally protected interest. Rosburg and Parker must demonstrate that pregnant women have a constitutional right to privacy that arguably has been abridged by the prohibition against the unlicensed practice of midwifery in section 12–36–106(1)(f). The midwives base their claim solely on the federal constitution.

This court has recognized a fundamental privacy right encompassed by the liberty interest protected by the due process clause of the United States Constitution.

*See, e.g., Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 369. We also have pointed out that "[w]hile the outer limits of this aspect of privacy have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage, procreation, contraception, family relationships, and child rearing and education.' " *Id.* at 369 (citations omitted). Neither this court nor the United States Supreme Court has addressed the issue of the application of this privacy right to childbirth. *Cf. Seven Thirty–Five East Colfax, Inc.,* 697 P.2d at 368–69 n. 26 (vendors of obscene material had standing to assert the rights of customers privately to *possess* obscene materials, but vendors did not have standing to assert the rights of customers to *purchase* obscene materials because the United States Supreme Court explicitly had held that there was no constitutional right to the means of acquisition and distribution of obscene materials).

In addition, we previously have conferred standing on the grounds that an alleged injury implicated a legally protected interest without resolving whether the alleged injury, on the merits, constituted an injury to a legally protected interest. *See Olson,* 687 P.2d at 440 (conferring third-party standing on a teacher to assert the First Amendment rights of students because the teacher "ha[d] sufficiently demonstrated, at least for the purpose of third party standing," that the termination of funding for a student newspaper infringed on the first amendment rights of students, and remanding for proceedings on the merits of the claim); *Conrad v. City and County of Denver,* 656 P.2d 662, 668 (Colo.1982) (holding that the alleged injury to plaintiffs challenging the inclusion of a creche among the Christmas decorations at the

Denver City and County Building was to a legally protected interest, and remanding the case to the trial court to determine whether a principal or primary effect of the display was to advance the Christian religion); *Dodge v. Department of Social Services,* 198 Colo. 379, 600 P.2d 70 (1979) (holding that citizen taxpayers had established that their alleged injury was to a legally protected interest because they averred that an allegedly wrongful expenditure of funds violated the Colorado Constitution and that the expenditure was not authorized by statute, but remanding to the trial court for resolution of the merits of plaintiffs' arguments). *See also Augustin,* 626 P.2d at 629, 630 (holding that a party had third-party standing because "the nature of the constitutional violation asserted by petitioners on behalf of [the third parties], that is, the right to privacy, [was] such that standing [was] appropriate," and then resolving whether the third parties' right to privacy was violated in the case).

We also note that public policy favors the recognition of third party standing in a case like this where the challenged law imposes a duty on the party who is before the court. Denying the dutyholder standing to assert the rights of third parties would encourage a fortuitous pattern of results. The statute at issue would impose a duty on the dutyholder if no third party previously had challenged the statute but the statute no longer would impose the duty if a third party previously had challenged the statute. *See* Note, *Standing to Assert Constitutional Jus Tertii,* 88 Harv. L.Rev. 423, 432–33 n. 51 (1974).[3] Conferring standing on Rosburg and Parker to raise and fully argue the issue of whether the prohibition violates pregnant women's privacy right also enables us fully to address the privacy right issue rather than

---

3. The abortion cases of *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), illustrate the problem. "The Court in those cases sustained challenges brought by pregnant women against statutes which imposed criminal liability on physicians who performed abortions under certain circumstances. A doctor who was prosecuted for per-

forming an abortion, and who was denied the opportunity to assert *jus tertii,* could have been convicted prior to *Roe* and *Doe;* after those decisions, doctors performing the same acts would be immune from liability." Note, *Standing to Assert Constitutional Jus Tertii,* 88 Harv.L. Rev. 423, 432–33 n. 51. This fortuitous pattern of results arises, of course, only when the third-party challenge is successful.

address the issue in cursory fashion in the context of standing. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* 190 (2d ed. 1973) (arguing that the formulation of the substantive scope and purpose of the asserted constitutional protection in terms of standing obscures the true nature of the issue).[4]

We find that standing is appropriate in this case. Rosburg and Parker are subject to direct injury under the statute at issue, consideration of the prudential limitations on standing weighs heavily in favor of standing, and neither the Supreme Court nor this court has addressed the issue of the privacy right of pregnant women that Rosburg and Parker seek to assert in this case. Moreover, to deny standing in cases such as this would encourage a fortuitous pattern of results and obscure the issue of the scope of the constitutional right at issue.

## II.

We now proceed to the merits of Rosburg's and Parker's argument that the prohibition against the unlicensed practice of midwifery violates the right of privacy of pregnant women. In *Roe v. Wade*, 410 U.S. 113, 164–65, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973), the United States Supreme Court recognized that the state has a legitimate interest in protecting the well-being of the fetus from the point in time of its viability. *See also Bowland v. Municipal Court*, 18 Cal.3d 479, 495, 556 P.2d 1081, 1089, 134 Cal.Rptr. 630, 638 (1976) (discussing *Roe* in holding that a statute prohibiting the unlicensed practice of midwifery did not violate pregnant women's right of privacy); *Leigh v. Board of Registration in Nursing*, 399 Mass. 558, 561–62, 506 N.E.2d 91, 94 (1987) (discussing *Roe* and *Bowland* in holding that a regulation prescribing certification requirements for nurse-midwives did not violate pregnant women's right to privacy). The United States Supreme Court held that after the

fetus is viable, the state's interest in the life of the fetus superseded the pregnant woman's privacy right, and from that point the state could prohibit abortion except when necessary for the preservation of the mother's life or health. *Roe*, 410 U.S. at 164–65, 93 S.Ct. at 732. The Court also held that the state, out of its interest in promoting the health of the mother, could regulate the abortion procedure in ways reasonably related to maternal health in the stage subsequent to the first trimester. *Id.* at 164, 93 S.Ct. at 732. The Court also expressly held that the state may proscribe the performance of an abortion at any stage of pregnancy by a person who is not a licensed physician. *Id.* at 165, 93 S.Ct. at 732–33.

Under these holdings from *Roe*, the state's prohibition against the unlicensed practice of midwifery does not violate pregnant women's privacy right. While the right of privacy encompasses some personal choices related to procreation, it does not include the personal choice of whether to utilize a lay midwife to assist in childbirth. The right of privacy has not been interpreted so broadly. We therefore hold that the state may, out of its interest in protecting the health of the mother and her child, proscribe the unlicensed practice of midwifery without violating the privacy right of the pregnant woman.

## III.

The midwives argue that the provisions of section 12–36–106(1)(f) violate the midwives' Fourteenth Amendment right to equal protection of the law. Specifically, the midwives contend that the prohibition of lay midwifery impermissibly discriminates between lay midwives and licensed nurse-midwives. We disagree.

Because no fundamental right or suspect class is involved in the prohibition against the unlicensed practice of midwifery, we examine section 12–36–106(1)(f) under the rational basis test. *See, e.g., Austin v. Litvak*, 682 P.2d 41, 49–50 (Colo.

4. We also again note that to deny Rosburg and Parker standing to raise the issue of the privacy right potentially would permit the dilution of

the pregnant women's rights without an argument made on behalf of the women whose rights might be diluted.

1984). Under the two-prong rational basis test, the statutory classification must (1) be "reasonable not arbitrary," or have "some rational basis in fact," and (2) "bear a rational relationship to legitimate state objectives" or be "reasonably related to a legitimate governmental interest." *Austin*, 682 P.2d at 50.

The test requires that this court "conduct a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals." *Id.* However, "[a]lthough parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, they cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which [the court] may take judicial notice, that the question is at least debatable.'" *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981) (citations omitted).

The prohibition of lay midwifery under section 12–36–106(1)(f) clearly satisfies the rational basis test. The classification of licensed nurse-midwives versus lay midwives is rational and reasonable. Testimony at trial revealed that nurse-midwives practicing in Colorado are required to be registered nurses, must have an additional year of midwifery training and also must participate in continuing education. The state's expert in pediatrics and obstetrics testified that the state's certification of nurse-midwives and prohibition of lay midwifery was "very reasonable and rational" and explained his reasoning as follows:

I think the—the entry point of the skill level that's required of a basic nurse, which is the knowledge of pathophysiology of labor and delivery, technical skills, counseling skills, knowledge of problems that could arise during labor and delivery, I think is essential. That knowledge base is essential. I think on top of that the nurse midwifery training adds to that

the ability to make decisions around that knowledge, decisions being for prenatal care, during labor and delivery, and then adding to that the ability to handle a newborn who needs resuscitation ... at the time of birth is not a skill that [a lay midwife] has and also would require further training.

Rosburg, on the other hand, testified that her formal education consisted of completion of high school and one year of college.[5]

Licensed nurse-midwives also practice under different protocols from lay midwives.[6] Nurse-midwives are required to practice under the supervision of a backup physician; lay midwives are not required to have a backup physician. The nurse-midwives also take several prescription medications to the home to ensure the safety of the mother and child. When asked about using prescription medications, Rosburg testified that she previously had used an anesthetic, but did not remember its name and did not know whether it was a prescription drug in Colorado. She had procured the drug in Mexico. These differences between the practice of lay midwives and certified nurse-midwives in Colorado clearly make the legislature's distinction between the two groups rational and reasonable.

The certification of licensed nurse-midwives and prohibition against lay midwives also is rationally related to a legitimate governmental interest. It is beyond question that the state has a legitimate interest in protecting the health and safety of the mother and her child. *See, e.g., Roe*, 410 U.S. at 164–65, 93 S.Ct. at 732. The legislature enacted the Colorado Medical Practice Act "in the interests of public health, safety and welfare ... to the end that the People shall be properly protected against unauthorized, unqualified, and improper practice of healing arts" in Colorado. § 12–36–102, 5 C.R.S. (1985). It also is well-established that the state has a legit-

5. Parker elected not to testify at trial, citing her privilege against self-incrimination.

6. Because lay midwives are unregulated, anyone can hold herself out as a lay midwife and there are no required protocols as such. Rosburg, however, testified that she was a member of the Colorado Midwives Association, an association which had adopted certain protocols.

imate interest in regulating the practice of medicine and prohibiting unlicensed persons from providing medical treatment. *People v. Jeffers,* 690 P.2d 194 (Colo.1984); *Dixon v. Zick,* 179 Colo. 278, 500 P.2d 130 (1972); *Lipset v. Davis,* 119 Colo. 335, 203 P.2d 730 (1949); *Smith v. People,* 51 Colo. 270, 117 P. 612 (1911).

The certification of licensed nurse-midwives and prohibition against lay midwives also is rationally related to the State's interest in protecting the life and health of the mother and her child. As discussed above, the nurse-midwives maintain strict certification requirements and practice under safer protocols than lay midwives. These requirements and practices directly impact the health and safety of the mother and her child.[7]

## IV.

■ Rosburg and Parker also contend that section 12–36–106(1)(f) is unconstitutionally vague, both facially and as applied to them. Appellants argue that the phrase, "the practice of midwifery," renders the section unconstitutionally vague because the phrase is not defined in the statute. Appellants also point out that the Board of Medical Examiners (the "Board") has not adopted a definition of what constitutes midwifery and that the Board decides whether a practice constitutes midwifery on a case-by-case basis. Despite these contentions, we hold that "the practice of midwifery" is not unconstitutionally vague.

■ The criteria by which a statute challenged on vagueness grounds is judged are well-established. Statutes are presumed to be constitutional and a party asserting that a particular statute is unconstitutional must prove the unconstitutionality beyond a reasonable doubt. *See, e.g., Eckley v. Colorado Real Estate Commission,* 752 P.2d 68, 73 (Colo.1988). To avoid being unconstitutionally vague, laws must provide fair warning of their prohibitions to avoid trapping the innocent. *People v. Batchelor,* 800 P.2d 599, 603 (Colo.1990). A criminal statute may be unconstitutionally vague when people "of common intelligence must necessarily guess at its meaning." *Id.* A penal statute must articulate definite and precise standards capable of fair application by those who must apply them to avoid arbitrary and discriminatory enforcement. *Id.*

■ However, words and phrases used in statutes are to be considered in their generally accepted meaning, and the court has a duty to construe the statute in such a way that it is not void for vagueness when a reasonable and practicable construction can be given to its language. *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 140, 606 P.2d 64, 66 (1980). In addition, the strong presumptive validity of a legislative act militates against invalidating a statute as vague merely "because difficulty is found in determining whether certain marginal offenses fall within [its] language." *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974) (quoting *United States v. National Dairy Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963)).[8]

Although "midwifery" is neither defined in the statute nor defined by the Board, "midwife" is a term of common usage and

---

7. Rosburg and Parker also complain that the prohibition against lay midwives prevents women, particularly poor women in rural areas, from having home births because of the unavailability and unwillingness of nurse midwives or physicians to do home births. Testimony at trial demonstrated that the practice of nurse midwifery in Colorado is growing. Moreover, the legislature may, in its discretion, address one phase of a problem and neglect others without violating the equal protection clause. *See, e.g., Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (upholding a statute that, in effect, prevented opticians from fitting old lenses into new frames or supplying new or duplicate lenses without a prescription, but which exempted sellers of ready-to-wear glasses from the restriction).

8. The parties dispute under what standard the vagueness of section 12–36–106(1)(f) should be scrutinized. *See Parrish v. Lamm,* 758 P.2d 1356, 1366 (Colo.1988) (applying *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). We decline to address the issue because section 12–36–106(1)(f) passes constitutional muster under either standard of scrutiny.

people of common intelligence need not guess at its meaning. Its definitions in Webster's Third New International Dictionary ("a woman not qualified as a physician who assists other women in childbirth ...), and in Black's Law Dictionary ("[a] woman who assists at childbirth; an *accoucheuse*"), are nearly identical. *Webster's Third New International Dictionary* 1431 (1986); *Black's Law Dictionary* 895 (5th ed. 1979). *Cf. People v. Ro'Mar*, 192 Colo. 428, 559 P.2d 710 (1977) (holding a statute that prohibited conducting a "detective business" without a license unconstitutionally vague where neither the statute, common usage, dictionary definitions, nor similar statutes of other states provided a sufficient definition of "detective business"). These dictionary definitions match the definition of a midwife which Rosburg gave at trial. Rosburg defined a midwife as "a woman who cares for another woman in childbirth." In addition, the majority of courts to consider the issue has defined midwifery as the act of assisting at childbirth. *Northrup v. Superior Court*, 192 Cal.App.3d 276, 237 Cal.Rptr. 255 (1987); *Smith v. State of Indiana*, 459 N.E.2d 401 (Ind.Ct.App.1984); *State of Missouri v. Southworth*, 704 S.W.2d 219 (Mo.1986) (holding a statute that prohibited any person other than a registered physician from engaging in "the practice of midwifery" was not unconstitutionally vague). *But cf. People v. Jihan*, 127 Ill.2d 379, 387–88, 130 Ill.Dec. 422, 426–427, 537 N.E.2d 751, 755–56 (1989) (holding, in the context of a criminal prosecution, that the term "midwifery" was unconstitutionally vague because it was not clear whether "midwifery" meant assisting at childbirth, or, more specifically, actually delivering the child).

We conclude that the term "practice of midwifery" is not unconstitutionally vague on its face. Constructions of the terms "midwife" and "midwifery" from common usage, legal and non-legal dictionaries, and case law are nearly unanimous in defining midwifery as assisting at childbirth. Wom-

en not properly licensed who assist at childbirth, therefore, are sufficiently aware that their conduct is prohibited.[9] Neither the Board nor prosecutors are left with the unfettered discretion that the doctrine of vagueness seeks to avoid.

The term "practice of midwifery" also is not unconstitutionally vague as applied to Rosburg and Parker. They also were aware of what conduct was prohibited by the statute and their conduct fell within the prohibition. Rosburg testified at trial that her profession was that of a lay midwife and she defined the term in accordance with applicable dictionary and legal definitions.[10] The trial court also specifically found that Rosburg and Parker had engaged in the practice of midwifery.

Accordingly, we uphold the constitutionality of section 12–36–106(1)(f) and affirm the trial court's order permanently enjoining Rosburg and Parker from practicing midwifery without a license.

---

**9.** There are, of course, exceptions to this prohibition in emergency situations where people not licensed as nurse midwives or physicians assist in childbirth.

**10.** We again note that Parker elected, out of her right against self-incrimination, not to testify on her own behalf.