J. P. L. AUGUSTIN, Robert M. Charlson,
Charles E. Corliss and Lawrence B.
Knudson, Petitioners,

v.

J. Richard BARNES, Commissioner of
Insurance, State of Colorado,
Respondents.

No. 79SC19.

Supreme Court of Colorado,
En Banc.

March 23, 1981.

Rehearing Denied April 27, 1981.

Lohf & Barnhill, P. C., Ernest W. Lohf, David G. Ebner, Denver, for petitioners.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Jeffery G. Pearson, Deanna E. Hickman, Asst. Attys. Gen., Denver, for respondents.

Eugene L. Copeland, Gary W. Waggoner, Rhonda G. Smith, Chris L. Chandler, Denver, for amicus curiae, Colorado Life Convention.

ERICKSON, Justice.

Certiorari was granted to review the decision of the court of appeals in *Augustin v. Barnes*, 41 Colo.App. 533, 592 P.2d 9 (1978). We affirm in part and reverse in part.

At issue is the validity of Division of Insurance Regulation No. 72–7 (Regulation). The Regulation was promulgated by the Commissioner of Insurance (Commissioner) pursuant to his statutory authority to establish reasonable rules and regulations regarding prohibited methods of competition and unfair or deceptive practices in the insurance business. Section 10–3–1104, C.R.S.1973. *See also,* sections 10–3–1101, 10–1–108(8), and 10–1–109, C.R.S.1973.

The Regulation controls life insurance replacement transactions which are commonly called "switching." In a replacement situation governed by the Regulation, the insured has an existing policy issued by the "replaced insurer" which is about to be replaced with a policy to be issued by the "replacing insurer." [1] *See* 1 Harnett, *Re-*

---

1. If the replacement is effected by means of incomplete, or inaccurate, or misleading information, the act is termed "twisting." Baird, *Abuses in the Replacement of Life Insurance,* 48 Neb.L.Rev. 911 (1969). *See also,* Hendricks, *A Legal Analysis of the Sale of Life Insurance,* 6 Hous.L.Rev. 810 (1969).

*sponsibilities of Insurance Agents and Brokers*, § 5.13A (1980). As a condition, the Regulation requires the replacing insurer: (1) to provide the insured with a "Disclosure Statement" which includes a comparison between the terms of the insured's existing life insurance policy and the terms of the proposed replacement policy; and (2) to notify the insurer whose insurance is being replaced of the proposed replacement. Article VI (4)(c) of the Regulation states:

"4. Where a replacement is involved:"

\* \* \* \* \* \*

"c. [Each insurer shall] immediately notify any insurer whose life insurance is being replaced of the fact of such intended replacement, the name of the insured and the policy number of the replaced insurance or other information sufficient to identify the policy and upon request of the applicant promptly furnish said insurer a copy of any proposal used and the completed 'Disclosure Statement....'"

Petitioners are individuals engaged in the sale of life insurance policies in Colorado. They commenced an action in the district court to enjoin enforcement of the Regulation. After a hearing on petitioners' request for a permanent injunction, the district court held the Regulation valid except insofar as Article VI (4)(c) required the replacing insurer to notify the replaced insurer of the switch in instances where the insured requested that no disclosure be made. The district court concluded that Article VI (4)(c) violated the insured's right to privacy under the First and Fourteenth Amendments to the United States Constitution. *U.S.Const.* amends. I and XIV.

The court of appeals rejected petitioners' argument that the Regulation has an anticompetitive effect in violation of section 10–3–1101, C.R.S.1973, and affirmed the district court's holding that the Regulation is valid. The court of appeals reversed the district court's order enjoining enforcement of Article VI (4)(c). The court concluded that petitioners did not have standing to assert a violation of the insured's constitutional rights.

## I.

### *Regulation No. 72–7*

Petitioners contend that the Regulation contravenes the legislative prohibition in section 10–3–1101, C.R.S.1973, against regulations which adversely affect free and open competition in the sale of insurance because it imposes regulatory burdens only on the replacing insurer. We disagree.

Section 10–3–1101, C.R.S.1973, prohibits the promulgation of regulations which adversely affect free and open competition in the sale of insurance. On the other hand, the General Assembly has manifested its concern by specifically addressing unfair practices in the sale of replacement insurance. Section 10–3–1104(1)(a)(VI), C.R.S. 1973, states that misrepresentation for the purpose of inducing exchange or conversion of an insurance policy is an unfair method of competition and a deceptive business practice. Article II (2) of the Regulation provides that one of the purposes of the Regulation is to "preclude *unfair* methods of competition and *unfair* practices" in replacement insurance transactions. (Emphasis added.)

The district court found that:

"The regulation in question [72–7] attempts to help the public to make an informed decision concerning the replacement of existing life insurance with another policy by requiring a replacing insurance sales agent to make full disclosure of the relative economic values of the competing policies and to make this disclosure by means of a standardized comparison format detailed in the regulation."

■ Administrative regulations regularly promulgated are presumed valid and the burden is upon the challenging party to establish the asserted invalidity beyond a reasonable doubt. *Moore v. District Court,* 184 Colo. 63, 518 P.2d 948 (1974).

■ We do not view the fact that the replaced insurer is not required to provide

the insured with a "Disclosure Statement" as placing the replacing insurer at a competitive disadvantage. Where the replacing insurer's "Disclosure Statement" complies with the Regulation, all that is needed from the replaced insurer is to either point out errors in the statement or to argue from the statement that the insurance should not be replaced. Requiring a "Disclosure Statement" from the replaced insurer would be superfluous. *See Winkler v. Colorado Department of Health*, 193 Colo. 170, 564 P.2d 107 (1977). (The legislature is not required to implement an all-or-none or totally comprehensive measure.)

We conclude that any anti-competitive effect of the Regulation is outweighed by the Commissioner's concern with eliminating unfair methods of competition and unfair practices in replacement insurance transactions. As we said in *Moore v. District Court, supra* :

"The presumption of validity of the rules regularly promulgated is not to be lightly cast aside by mere allegations in a complaint of unconstitutionality, and the burden is upon the party challenging the constitutionality to establish by a clear and convincing showing beyond a reasonable doubt the asserted invalidity. This requires more than a mere assertion of a claim." *Id.* 184 Colo. at 67, 518 P.2d 948.

## II.

### Standing

■ The general rule of standing in Colorado is that no person may assail the constitutionality of a statute or regulation except to the extent that that person is adversely affected by the alleged defect. *Reed v. Dolan*, 195 Colo. 193, 577 P.2d 284 (1978); *American Metal Climax Inc. v. Butler*, 188 Colo. 116, 532 P.2d 951 (1975); *McKinley v. Dunn*, 141 Colo. 487, 349 P.2d 139 (1960).

■ There is, however, an exception to the general rule which gives a party standing to assert the rights of others not before the court. A litigant must initially show injury in fact to himself caused by the

application of the statute or regulation. *See Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). A litigant's injury, coupled with the presence of one or more of the following factors, may justify third party standing:[2] First, the presence of a substantial relationship between the claimant and the third party. *See N. A. A. C. P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Second, the difficulty or improbability that the person who has suffered deprivation of a constitutional right will be able to assert it. *See N. A. A. C. P. v. Alabama, supra.* Third, the need to avoid dilution of the third party's constitutional rights if third party standing is not permitted. *See Craig v. Boren, supra.*

In *Craig v. Boren, supra*, a licensed beer vendor brought an action for declaratory and injunctive relief claiming that an Oklahoma statute which prohibited the sale of beer to males under the age of 21 and to females under the age of 18, violated the males' right to equal protection of the laws. The Supreme Court found that operation of the statute inflicted injury in fact on the vendor because the vendor was forced to obey the statutory provisions and incur economic injury or disobey the statute and suffer sanctions. The vendor's injury, coupled with the fact that the concomitant rights of third parties would be adversely affected if the vendor's constitutional challenge failed, caused the court to conclude that the vendor had standing to assert the rights of third parties who sought access to the vendor's market or function:

"Otherwise, the threatened imposition of governmental sanctions might deter [the vendor] and other similarly situated vendors from selling 3.2% beer to young males, thereby ensuring that 'enforcement of the challenged restriction against the [vendor] would result indirectly in the

**2.** Note, Standing to Assert Constitutional Jus Tertii, 88 Harv.L.Rev. 423 (1974).

violation of third parties' rights.'" (Citation omitted). *Id.*, 429 U.S. at 195, 97 S.Ct. at 455.

*See also, Carey v. Population Services International, supra.*

Also relevant to third party standing is *N. A. A. C. P. v. Alabama, supra*, where Alabama obtained a court order requiring the N.A.A.C.P. (Association) to produce membership lists. The Association refused and was held in contempt. The Supreme Court reversed and concluded that the nexus between the Association and its members was sufficient to justify assertion of a constitutional violation of its members' rights by the Association. The Supreme Court found injury in fact to the Association, and then focused on the substantial relationship between the Association and its members and the nature of the constitutional right alleged to have been violated as the basis for granting the Association third party standing. The Supreme Court declared that the members were asserting their right to privacy in resisting disclosure of the membership lists, and that the Association was the appropriate party to vindicate the right:

> "If [the Association's] rank-and-file members are constitutionally entitled to withhold their connection with the Association despite the production order, it is manifest that this right is properly assertable by the Association. To require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion." *Id.* 357 U.S. at 459, 78 S.Ct. at 1170.

█ Application of the standing requirements enunciated by the Supreme Court to the facts of this case leads us to conclude that petitioners have standing to assert the alleged violation of the insured's constitutional rights.

Petitioners are licensed insurance salesmen engaged in the sale of life insurance in Colorado. Under Article VI (4)(c) of the Regulation, petitioners are required to notify the insurer whose insurance is being replaced of the proposed replacement, even when the insured has specifically requested that the transaction remain confidential.

First, petitioners have established injury in fact because Article VI (4)(c) of the Regulation has an adverse economic impact on their sales practices, and if petitioners attempt to preserve the insured's privacy, they may do so only by violating the Regulation and risking penalties imposed by the Department of Insurance which may include revocation of petitioners' licenses or the Department of Insurance's refusal to effect the replacement of insurance. *See Carey v. Population Services International, supra; Craig v. Boren, supra.*

Second, we conclude that the nature of the constitutional violation asserted by petitioners on behalf of the insured, that is, the right to privacy, is such that standing is appropriate. At the moment an insured filed a complaint for an injunction to prevent disclosure of the replacement, the fact of replacement would be known to the replaced insurer. *See N. A. A. C. P. v. Alabama, supra.* Thus, petitioners are in the best position to assert the insured's constitutional right to privacy.

Finally, this case is analogous to *Craig v. Boren, supra*, because petitioners' compliance with Article VI (4)(c) of the Regulation would result directly in the violation of the insured's right to privacy in those cases where the insured has requested confidentiality.

## III.

### The Right to Privacy

█ The United States Constitution does not explicitly mention any right to privacy.[3] The Supreme Court of the United States, however, has recognized that the right to privacy is implicit in various amendments to the Constitution, including the First,[4]

---

3. Warren and Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890).

4. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972).

Fourth,[5] Fifth,[6] Ninth,[7] and Fourteenth [8] Amendments, and the penumbra of the Bill of Rights.[9] *See also, Foe v. Vanderhoff,* 389 F.Supp. 947 (D.Colo.1975); *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157; *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970).

Only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" have been included in the guarantee of personal privacy. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1972); *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

The cases which have recognized the right to privacy have been limited largely to matters regarding marriage, procreation, and family relationships. *See Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). We conclude, however, that the right of privacy is broad enough to encompass the insured's right to prevent disclosure of the replacement of life insurance by the means imposed by Article VI (4)(c) of the Regulation.

In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976), the Supreme Court declared that the right to privacy encompasses two different kinds of interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599–600, 97 S.Ct. at 876. *See also, Charnes v. DiGiacomo,* Colo., 612 P.2d 1117 (1980).

Article VI (4)(c) of the Regulation requires the replacing insurer to notify the replaced insurer of the "switching" of policies notwithstanding the insured's request that the transaction remain confidential. Thus, the Regulation clearly invades the insured's interest in avoiding disclosure of personal matters. *See Whalen v. Roe, supra.*

The fact that Article VI (4)(c) of the Regulation invades the insured's right to privacy does not automatically invalidate the Regulation. Even a burdensome regulation may be validated by a sufficiently compelling state interest. *Carey v. Population Services International, supra; Roe v. Wade, supra.*

The Commissioner has not advanced any compelling reason why the replaced insurer must be notified of the switch in those instances where the insured has requested confidentiality. A generalized concern for protecting the public from unscrupulous practices or misrepresentations by replacing insurers is outweighed by the insured's request for nondisclosure.

Finally, petitioners assert that the court of appeals abused its discretion in not granting a motion to supplement the record so that the petition for rehearing could properly be considered. We find no merit in the contention. C.A.R. 10(e).

Accordingly, we reverse the court of appeals and remand to the court of appeals with directions to reinstate the order of the district court which permanently enjoined enforcement of Article VI (4)(c) of the Regulation as applied to persons who request that facts concerning the replacement not be disclosed.

DUBOFSKY, J., does not participate.

---

**5.** *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

**6.** *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

**7.** *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

**8.** *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1976).

**9.** *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).