Judith OLSON, Plaintiff-Appellant,

and

Marti Dyer-Allison, Vicki Evans, and Marie Noon, on behalf of themselves and others similarly situated, Plaintiffs,

v.

The STATE BOARD FOR COMMUNITY COLLEGES AND OCCUPATIONAL EDUCATION, and Ellin Mrchek, Angelo M. Daurio, Stephen J. DeJong, Ross Forney, Thomas T. Grimshaw, Richard O. Jones, Gwendolyn A. Thomas, Fred W. Valdez, Jr., Kirk Wagner, members of the State Board for Community Colleges and Occupational Education; The Pikes Peak Community College Council and Norman Pledger, Betty Dyatt, Mildred Guy, Jerry Jones, James Lunghofer, members of the Pikes Peak Community College Council; The Pikes Peak Community College Student Senate, and Jeff Johnson, Carol Davis, Jane Wertz, Pam Shaver, Cheryl Shaver, Kathy Shaver, Fred Skinner, Alvin Wilson, Dee Steinbaugh, members of the Pikes Peak Community College Senate; and Donald W. McInnis, John Rodwick, and Robert Henry, members of the administration of Pikes Peak Community College, Defendants-Appellees.

No. 81CA0372.

Colorado Court of Appeals,
Div. III.

May 6, 1982.

Rehearing Denied June 3, 1982.

Certiorari Granted Oct. 18, 1982.

Larry F. Hobbs, William P. Bethke, Denver, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Jo Ann Soker, Asst. Attys. Gen., Denver, for defendants-appellees.

TURSI, Judge.

The issue presented on this appeal is whether the faculty advisor of a student-run college newspaper has standing to raise First Amendment challenges to the termination of funding for the newspaper. The trial court, on a motion for summary judgment, ruled there was no standing. We reverse.

On June 1, 1979, the student senate of Pikes Peak Community College in Colorado Springs voted to remove the entire appropriation of $12,400 for the *Pikes Peak News* from the proposed 1979–1980 student activities budget. The *Pikes Peak News* was the student newspaper and had been funded by student activity fees since its inception.

The student activities budget is funded by mandatory student fees, and is disbursed by the student senate with the permission and approval of defendants State Board, the College Council, and the college administrators.

The *News* has not been published since the date of the funding cutoff. However, the students have distributed a magazine-type publication entitled the *Pikes Peak Fuse, Supplement to the Pikes Peak News.* The *Fuse* has received no funds from the student activity fees. It is funded entirely from advertising revenue and some funds from the instructional budget of the college.

In August 1979, a suit predicated upon 42 U.S.C. § 1983 was filed by four individuals on behalf of themselves and others similarly situated. The complaint alleged that "funding for the *Pikes Peak News* was cut off because of defendants' disapproval of its content and desire to suppress or control its editorial policies." All of the defendants were identified in their official and individual capacities and were charged with so acting under color of state law with the purpose of depriving the plaintiffs of their constitutionally protected rights and privileges.

The named plaintiffs and their capacities were as follows: Marti Dyer-Allison, 1978–1979 news editor of the *News;* Vicki Evans, 1979–1980 editor of the *News;* Marie Moon, general manager of the *News;* and Judith Olson, faculty advisor to the *News* and the journalism instructor at the college. The class action aspects of the complaint were neither alleged nor pursued. Plaintiffs prayed for an injunction enjoining defendants from ceasing to fund the *News* adequately because of disapproval of its content and editorial policy. They also sought attorneys' fees pursuant to 42 U.S.C. § 1988.

The trial court denied plaintiffs' motion for a preliminary injunction and, in March 1981, granted defendants' motion for summary judgment concluding that none of the named plaintiffs had standing to pursue the claims for relief.

The court's conclusion that Dyer-Allison and Moon lacked standing was based on its finding that they had graduated prior to the school year for which the funding was cut. Evans, the court concluded, suffered no injury in fact to her constitutionally protected interests of freedom of speech, press, and association because she exercised her First Amendment rights through the "substitute forum" of the *Fuse.*

As to Olson, the court concluded that her First Amendment rights were not injured by the funding cut off because 1) the *News* was a student newspaper over which she could not exercise editorial control, 2) she had no constitutional right to use a newspaper as a teaching tool, and 3) she could not assert the rights of third-parties, the students in this case. Only Olson has appealed the court's ruling.

I

*Olson's Standing To Assert Her Own Rights*

█ College officials cannot censor a student newspaper which serves as a forum of student expression in the absence of an overriding state interest. *Joyner v. Whiting,* 477 F.2d 456 (4th Cir. 1973).

"It may well be that a college need not establish a campus newspaper, or, if a paper has been established, the college may permanently discontinue publication for reasons wholly unrelated to the First Amendment. But if a college has a student newspaper, its publication cannot be suppressed because college officials dislike its editorial comment. This rule is but a simple extension of the precept that freedom of expression may not be infringed by denying a privilege." *Joyner v. Whiting, supra* (citations omitted).

There is no doubt that proper student plaintiffs could bring an action challenging the discontinuation of funding of the newspaper for constitutionally impermissible purposes. However, the question before us is whether the newspaper's faculty advisor has standing to bring such an action.

In *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977) the court stated: "When standing is in issue, the broad question is whether the plaintiff has stated a claim for relief which should be entertained in the context of a trial on the merits." The basic test of standing set forth in *Wimberly v. Ettenberg, supra,* is "whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." Thus, the allegation of the injury in fact necessary for standing is not to be measured by the probability of Olson's prevailing on the merits at trial, but rather by whether she has alleged an injury to a legally protected interest as contemplated by the First Amendment.

Olson asserts that she has suffered injury in fact to her right of academic freedom because she is unable to teach First Amendment values through the practical experience of their exercise in the publication of a newspaper free from censorship. It is undisputed that Olson used the paper as a co-curricular activity and as an adjunct tool in her courses on newspaper journalism. She further claims that as a participant in the publication of a newspaper, she enjoys First Amendment protection.

Defendants contend that Olson has suffered no injury because she has not been fired, demoted, or suffered any pecuniary loss, and that her academic freedom has not suffered because she retains her position as a journalism instructor and advisor to the *Fuse,* the alternative to the *News.* We reject both of defendants' arguments.

### A. Injury In Fact

Contrary to defendants' contention, injury in fact may be found in the absence of direct economic injury. *Dodge v. Department of Social Services,* 198 Colo. 379, 600 P.2d 70 (1979). This is especially true where, as here, "[t]he rights involved extend beyond self-interest of individual litigants and are of 'great public concern'." *Colorado State Civil Service Employees Ass'n v. Love,* 167 Colo. 436, 448 P.2d 624 (1968); *Howard v. City of Boulder,* 132 Colo. 401, 290 P.2d 237 (1955). It is of "great public concern" that First Amendment freedoms not be abridged, especially in "[t]he college classroom with its surrounding environs [which] is peculiarly the 'marketplace of ideas'" where the "'vigilant protection of constitutional freedoms'" is vital to all. *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). As the Court said in *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967):

"Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom."

*See also Reineke v. Cobb County School District,* 484 F.Supp. 1252 (N.D.Georgia 1980).

Olson has claimed a direct injury to her ability to teach First Amendment values through the loss of "hands-on" experience of publishing a newspaper because of constitutionally impermissible censorship. Although the defendants need not supply the students or Olson with a campus paper, they may not suppress the paper because they dislike its content. *Joyner v. Whiting,*

*supra.* That Olson and the students pursued other avenues of First Amendment expression, such as the *Pikes Peak Fuse,* does not diminish her claimed loss of the privilege to teach and participate in the publication of a newspaper which would have been funded but for the alleged censorship imposed by the defendants.

### B. Constitutionally Protected Interests

The next question to be answered is whether the injuries are to Olson's constitutionally protected interests. We hold that they are.

■ Olson used the paper as a co-curricular activity and tool to teach reporting, newspaper lay-out, advertising, and libel law. Teaching methods are constitutionally protected forms of expression, *Kingsville Independent School District v. Cooper,* 611 F.2d 1109 (5th Cir. 1980), to which injury can result even in the absence of sanctions. *Wilson v. Chancellor,* 418 F.Supp. 1358 (D.Oregon 1976).

■ Since the college officials may not suppress the publication of the *News* because of their dislike of its editorial content, *Joyner v. Whiting, supra,* and since Olson's teaching methods, which included participation in the production of the *News* as an integral part of her teaching, are protected, *Kingsville Independent School District v. Cooper, supra; Wilson v. Chancellor, supra,* her activities with the *News* are protected, *Bertot v. School District No. 1,* 522 F.2d 1171 (10th Cir.1975).

■ The protections afforded by the First Amendment extended to Olson not only by virtue of her status as a teacher, but also because her activities connected with the newspaper are constitutionally protected. Even though she could assert no control over the content of the *News, see Reineke v. Cobb County School District, supra,* her "acts of assistance and association with the publication are protected, although no writing of her own was included." *Bertot v. School District No. 1, supra.* The situation here is even more compelling than in *Bertot* where the teacher had assisted an unsanctioned "underground" newspaper. Here, the *News* was the student news-

paper that had been funded since its inception by mandatory student fees. This funding preceded the presence of any of the plaintiffs at the school. Olson's participation in activities relating to the newspaper are protected by the First Amendment.

Therefore, we hold that if she did sustain the injuries which she claims, those injuries were to constitutionally protected interests and she has standing to challenge the infringement of her constitutional rights.

By this decision we do not intend to prejudge the motivations of the defendants in cutting the funds. While courts cannot tolerate official acts which chill and impinge the exercise of constitutional rights in the public school systems, *Keyishian v. Board of Regents, supra,* judicial interposition in the operation of the schools raises problems which require care and restraint. *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

Defendants have alleged several defenses, including one of which is that the cessation of funding was caused by lack of money and not because of a constitutionally impermissible desire to suppress editorial content. Another is that an ad hoc committee of the student government had on July 26, 1979, addressed a compromise proposal to the staff of the *News* which provided funding of $5,500 for the 1979–1980 academic year subject to certain conditions, and that on their return to school for the 1979–1980 academic year the staff had rejected the offer, thereby waiving their rights to a funded press. These defenses raise material questions of fact, and their merits can only be determined by further proceedings.

### II

### Olson's Standing To Assert The Rights Of The Students

In view of our holding that Olson has standing to assert her own rights, we need not reach the question of whether she can assert the rights of her students.

The judgment as to Olson is reversed and the cause is remanded for further proceedings.

KIRSHBAUM, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting:

I respectfully dissent.

It is important to focus on what is *not* before the court in this case: We are not dealing with an action of an arm of the state or one of its agencies to stifle opinions with which it disagrees, nor are we faced with a denial of a student's First Amendment guaranty. Rather, this is a suit brought by a faculty member based on the acts of the *student* senate in cutting off funds for one month and then offering a lower subsidy.

The faculty member does not specify by complaint or deposition how her individual rights to freedom of speech or press are impinged. She neither lost her job nor her position as faculty advisor. This was a *student* paper, and the funds in question were cut off by act of the *student* senate. I can perceive of no right of a faculty member to require such funding to continue, nor of the faculty member's right to exercise free speech in the student paper.

Contrary to the rationale of the majority, the teaching method of providing "hands on" experience to students by including them in the newspaper in question is not a "right" guaranteed by the constitution. The rights, if any, are those of the students. *See Reineke v. Cobb County School District,* 484 F.Supp. 1252 (N.D.Ga.1980). *Joyner v. Whiting,* 477 F.2d 456 (4th Cir.1973), relied upon by the majority, relates to the rights of students not faculty members.

This faculty member fails the basic test of standing set forth in *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977):

> "The proper inquiry on standing is whether the plaintiff has suffered *injury in fact* to a *legally protected interest* as contemplated by statutory or constitutional provisions. If he has not, standing does not exist, and the case must be dismissed." (emphasis added)

There is no basis upon which the trier of fact could conclude the faculty member sustained an injury to a legally protected interest. Thus, as *Wimberly* tells us: "If a person suffers no injury in fact ... no relief can be afforded, and the cause should be dismissed for lack of standing." *See also Theobald v. Board of County Commissioners,* Colo., 644 P.2d 942 (1982).

The faculty member's argument that she may assert the constitutional rights of the students also must fail because there is no cognizable injury to the faculty member alleged. *Augustin v. Barnes,* Colo., 626 P.2d 625 (1981).

The trial court properly disposed of this claim by summary judgment, and that judgment should be affirmed.