The AD HOC EXECUTIVE COMMITTEE OF the MEDICAL STAFF OF the MEMORIAL HOSPITAL, Plaintiff-Appellee,

v.

Roberta RUNYAN; James E. Severson; Keith Counts; Joyce Leander; Neil McCandless; Bruce Seeley and Louis Miller as the Board of Trustees For the Memorial Hospital, a county hospital; the Board of County Commissioners of the County of Moffat, State of Colorado; and Dr. Thomas Told, Defendants-Appellants.

No. 84SA10.

Supreme Court of Colorado,
En Banc.

March 31, 1986.

Harry A. Tucker, Jr., Grand Junction, for plaintiff-appellee Ad Hoc Executive Committee.

Calkins, Kramer, Grimshaw & Harring, Richard L. Harring, Charles E. Norton and Charles B. Hecht, Denver, for defendant-appellant Dr. Thomas Told.

Donley K. Rees, Craig, for defendant-appellant Bd. of Trustees for Craig Memorial Hosp.

ROVIRA, Justice.

Appellants, the Board of The Trustees for the Memorial Hospital (Trustees), the Board of County Commissioners of the County of Moffat, and Dr. Thomas Told appeal from an order of the Moffat County District Court reversing a decision by the Trustees. The Trustees had reversed an earlier decision of the Hearing Committee of the Medical Staff of the Memorial Hospital in which the staff privileges of Dr. Told were suspended for thirty days. We now reverse the decision of the district court on the ground that the appellee, the Ad Hoc Executive Committee of the Medical Staff,

lacked standing to challenge the decision of the Trustees.

## I.

The facts of this case are not in dispute. Lois J. Stoffle was scheduled for surgery to be performed on September 28, 1982, by Dr. Bock and Dr. James at Memorial Hospital in Craig, Colorado.[1] On September 17, 1982, Told, who at one time had been Stoffle's physician, advised her that she should obtain a second opinion before undergoing the surgery and should consider going to Denver to have the operation performed. Told also said that James was "unprofessional" because James had not informed Told of the scheduled surgery. As a result of this conversation, the hospital administrator sent a Request for Corrective Action to the Executive Committee of the Medical Staff. In the request, the administrator stated that it would appear that the conversation between Told and Stoffle was a violation of article II, section 2(I) of the *Bylaws and Rules and Regulations of the Medical Staff of Memorial Hospital* (Bylaws).[2]

On November 3, 1982, the Ad Hoc Executive Committee of the Medical Staff (Executive Committee)[3] conducted a formal in-

---

1. The Memorial Hospital in Craig is a county hospital created pursuant to § 25-3-301, 11 C.R.S. (1982). Section 25-3-304(1) expressly provides: "The board of public hospital trustees shall make and adopt such bylaws, rules, and regulations for its own guidance and for the government of the hospital as it deems expedient for the economic and equitable conduct thereof...." The Board of County Commissioners is authorized to appoint a board of seven public hospital trustees "chosen from the citizens at large with reference to their fitness for such office, all of whom shall be residents of the county...." § 25-3-302, 11 C.R.S. (1982 & 1985 Supp.).

2. Article II, sec. 2(I), of the Bylaws provides: "Staff members shall not discuss presumed deficiencies of any other physician with their patients or with members of the general public." The Request for Corrective Action also stated that action should be taken pursuant to art. IX, sec. 1 (causes for corrective action) of the Bylaws which provides in pertinent part:

 A Staff member's privileges in the The Memorial Hospital may be reduced, limited, sus-

pended, or terminated, or his Medical Staff membership may be suspended, terminated, or not renewed ... for violation of, or noncompliance with, the Medical Staff Bylaws and Rules and Regulations; for actions disruptive to the operations of the Hospital; ... or for unprofessional or unethical conduct.

3. The purpose and authority of the Executive Committee is set forth in the hospital Bylaws, art. XI, sec. 3(A). That section provides in pertinent part:

 EXECUTIVE COMMITTEE: The Executive Committee shall consist of the Chief of Staff, Vice Chief of Staff, and the Secretary-Treasurer.... The duties of the Executive Committee shall be the following:
 1. To act on behalf of the Medical Staff, subject to such limitations as may be imposed by the Bylaws and Rules and Regulations. ....
 11. To review periodically all information available regarding the performance and clinical competence of Staff members and other practitioners with clinical privileges and, as a result of such reviews, to make recommenda-

vestigation and hearing concerning the alleged misconduct of Told. After the investigation and hearing, the Executive Committee made findings, conclusions, and recommendations. The Executive Committee found, *inter alia:* that Told initiated the conversation with Stoffle; that Stoffle was a patient of Bock; that she was scheduled for surgery by James and Bock; that James was fully qualified to perform the surgery; that Told stated to Stoffle that James was "unprofessional" because James had not informed Told of the scheduled surgery; and that Told stated to Stoffle that he would rather she went to Denver for the surgery.

The Executive Committee concluded, in pertinent part: that Told's statements concerning having the surgery in Denver implied that the Memorial Hospital and Stoffle's local physicians "are no better than second best"; that his statements "undermine the stated goals of the Memorial Hospital as provided in Article II of the By-Laws"; that his statements violated article II, section (2)(I) of the Bylaws; that he had made similar statements in a previous ethical conduct case; and that "Told has been repeatedly admonished by other physicians and groups of physicians to refrain from comments of this type to patients."

The Executive Committee then recommended that Told's Medical Staff privileges be suspended for thirty days and that, at the expiration of the thirty days, he not be returned to Active Staff but be "returned" to Associate Staff.

Told appealed the adverse recommendations of the Executive Committee to the Medical Staff Hearing Committee of the Memorial Hospital (Hearing Committee),[4] and a hearing was held on January 12, 1983. Making only minor modifications, the Hearing Committee upheld the findings, conclusions, and recommendations of the Executive Committee.

Told then appealed the Hearing Committee's decision to the Trustees, which held a hearing on March 15, 1983. Prior to that hearing, all of the Trustees had received the transcripts of the hearings of the Executive and Hearing Committees; the exhibits from the Hearing Committee proceedings of January 12, 1983; the findings of the Executive and Hearing Committees; various motions and correspondence; and statements of both the Executive and Hearing Committees. At the hearing, each side was given the opportunity to make their arguments to the Trustees, but no new evidence was introduced. At the conclusion of the arguments, the Trustees deliberated and then voted 4–3 to reverse the decision of the Hearing Committee. The Trustees issued no written findings or conclusions.

On April 12, 1983, the Executive Committee and its individual members; the Hearing Committee and its individual members; Dr. James; and two taxpayers of Moffat County filed a complaint pursuant to C.R.C.P. 106(a)(4)[5] in the Moffat County District Court, naming as defendants the

---

tions for reappointments and for renewals of, or changes in, clinical privileges.

12. To take all reasonable steps to insure professionally ethical conduct and competent clinical performance from all members of the Medical Staff, including the initiation of and/or participation in Medical Staff corrective actions.

4. The Bylaws, art. X, sec. 1, grant a physician the right to seek review of an adverse decision of the Executive Committee before a Hearing Committee. Article X, sec. 2(C), describes the composition of the Hearing Committee. That section provides in pertinent part:

1. The Hearing Committee shall consist of the Medical Staff of the Hospital, subject to those exceptions as set forth below.

2. *Service on Hearing Committee*
(a) No member of the Medical Staff who has participated in the investigation of the case to be heard shall serve on the Hearing Committee. However, the fact that an appointee has heard of the case or has some knowledge of the facts involved shall not disqualify him from sitting on the Hearing Committee, unless such appointee feels that he cannot render a fair and just decision from an objective and impartial point of view.

5. C.R.C.P. 106 was amended on August 23, 1985. The amended rule became effective on January 1, 1986. The amendment has no effect on the resolution of this case.

Trustees, the Board of County Commissioners, and Told. The complaint, after setting out the history of the proceedings, alleged that the action of the Trustees violated due process of law, was contrary to the weight of the evidence, was arbitrary and capricious, and constituted an abuse of discretion.

In an order dated October 18, 1983, the district court dismissed for lack of standing all of the plaintiffs named in the complaint except the Executive Committee.[6] In conferring standing only upon the Executive Committee, the district court reasoned: "The Executive Committee was a party to the proceedings before the Board [of Trustees] in this action, and having suffered an adverse ruling by the Board is entitled to seek review pursuant to C.R.C.P. 106(a)(4)." The district court further ruled that it had subject matter jurisdiction over the appeal. In an order dated December 21, 1983, the district court vacated the ruling of the Trustees and reinstated the ruling of the Hearing Committee, concluding in pertinent part that the Trustees "acted arbitrarily, capriciously and in excess of the authority conferred upon it by its own Hospital Bylaws."

In addition to the standing challenge, appellants raise several other arguments on appeal, including: (1) the action of the Trustees was not quasi-judicial in nature and therefore the district court did not have jurisdiction to review its decision under C.R.C.P. 106(a)(4); (2) the district court erred in ruling that the Trustees were required to find that the Hearing Committee's decision was arbitrary or capricious before it could reverse the Hearing Committee; (3) the Trustees' decision to reverse the suspension of Told's staff privileges was not arbitrary or capricious; (4) the authority vested in the Executive and Hearing Committees under the Bylaws exceeded the statutory authority granted to professional review committees by statute;[7] and (5) certain provisions of the by-

laws are unconstitutionally vague and overbroad under the first and fourteenth amendments of the United States Constitution. Because we hold that the Executive Committee lacked standing, we find it unnecessary to address appellants' remaining arguments.

II.

In deciding whether the Executive Committee has standing, we must first determine which test of standing governs our analysis. When determining standing, this court generally relies on the two-part test of *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977). Under *Wimberly*, the resolution of a standing issue involves two considerations: (1) whether the plaintiff has suffered actual injury from the challenged governmental action; and (2) whether the injury is to a legally protected or cognizable interest. However, where a subordinate state agency seeks judicial review of an adverse decision of a superior state agency, we have applied the standing analysis set forth in *Martin v. District Court*, 191 Colo. 107, 550 P.2d 864 (1976). We believe *Martin* controls the resolution of the standing challenge in this case.

In *Martin*, the Montrose Board of County Commissioners, acting in its capacity as the county board of social services, dismissed the director of the county department of social services. The director appealed her dismissal to the merit system council of the state department of social services, which reversed the board of county commissioners and ordered reinstatement with back pay. The county then sought judicial review of the decision of the merit system council in an original proceeding. The district court denied the director's motion to dismiss for lack of standing. On review, this court held that a county board of social services "is not an adversely affected or aggrieved 'party' empowered to bring an action for judicial re-

---

**6.** Whether the trial court properly dismissed these parties is not an issue on appeal.

**7.** The Hearing Committee and Executive Committee have statutory authority to review a physician's quality of care given to a patient pursuant to § 12–43.5–102, 5 C.R.S. (1985).

view of an agency action within the meaning of section 24–4–106(4), C.R.S. 1973." *Martin,* 191 Colo. at 109, 550 P.2d at 865. The court noted that the county board was set up as a "subordinate agency or arm of the state," citing sections 26–1–116 and 26–1–118, 11 C.R.S. (1973). The court further stated:

> In the absence of an express statutory right, a subordinate state agency (the county board) lacks standing or any other legal authority to obtain judicial review of an action of a superior state agency (the merit system council). *Nadeau [v. Merit System Council,* 36 Colo. App. 362, 545 P.2d 1061 (1975)]; *see Board of County Commissioners v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244 (1974); and *Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970).

*Id.* 550 P.2d at 866.

Here, while we recognize that the Executive Committee is not a "subordinate state agency," we nevertheless believe that the reasoning in *Martin* applies with equal force. The rationale underlying *Martin* is articulated in *Lee v. Civil Aeronautics Board,* 225 F.2d 950, 951–52 (D.C.Cir.1955), where the circuit court states:

> The right to review of agency action is usually restricted to persons whom the agency regulates and affects adversely. When one government agency has been found to have standing to seek review of another government agency's action, the two agencies have had different interests, e.g., when the government as shipper or consumer challenges an administrative rate order. We have found no case in which agency action has been reviewed on the application of an official whose function is to prosecute claims in and for the same agency.

(footnotes omitted). *See also Lamm v. Barber,* 192 Colo. 511, 519, 565 P.2d 538, 544 (1977) ("It is well established that as a general rule, neither a county officer nor a subordinate county agency has any standing or legal authority to question or obtain judicial review of an action taken by a superior state agency."); *Iowa Dept. of Revenue v. Iowa State Board of Tax Review,* 267 N.W.2d 675 (Iowa 1978) (Because the Department of Revenue is subordinate to the Board of Tax Review in the decision-making process, it is not an "aggrieved or adversely affected party" within the meaning of the Administrative Procedure Act having standing to seek judicial review of the Board's decisions.); *Kostman v. Pine Lawn Bank and Trust Co.,* 540 S.W.2d 72 (Mo.1976) (Commissioner of Finance was not "person aggrieved" by action of circuit court in affirming State Banking Board's decision to allow bank to change its name and relocate, and commissioner therefore did not have standing to seek judicial review of Banking Board's decision or to appeal judgment of the circuit court); *State ex rel. Broadway Petroleum Corp. v. City of Elyria,* 18 Ohio St.2d 23, 247 N.E.2d 471, 475 (1969) ("The weight of authority negatives the right of an administrative officer of a governmental entity, or even the governmental entity or any representative thereof, to attack or void the decision of an agency of such governmental entity, which is authorized to review and reverse the determination of such administrative officer and does review and reverse that determination, except to the extent that legislation gives such administrative officer, the governmental entity or its representative the right to do so." (citations omitted)).

An analysis of the relevant statutory provisions indicates that the Executive Committee is subordinate to the Trustees. Section 25–3–304(1), 11 C.R.S. (1982), provides that a county hospital board of trustees "shall make and adopt such bylaws, rules, and regulations ... for the government of the hospital as it deems expedient for the economic and equitable conduct thereof...." Section 12–43.5–102, 5 C.R.S. (1985), authorizes the establishment of professional review committees. Subsection 12–43.5–102(2)(a) provides that such review committees may be authorized to act only by: "(a) The medical staff of a hospital licensed pursuant to part 1 of article 3 of title 25, C.R.S., if the medical staff oper-

ates pursuant to written bylaws approved by the governing board of the hospital." In accordance with this statutory scheme, the Trustees adopted bylaws which, under article XI, section 3 thereof, set forth the composition and duties of the Executive Committee. Article X of the Bylaws provides for review by the Trustees of decisions of the Executive Committee. Hence, the Executive Committee is created by the Trustees and answerable to the Trustees. The Executive Committee is, in effect, an arm of the Trustees.

Moreover, we have found no statutory provision which expressly or impliedly confers standing on the Executive Committee to seek review of a decision of the Trustees. The Executive Committee argues that the right to review derives from the professional review statute, §§ 12–43.5–101 to –103, 5 C.R.S. (1985). In general, this statute: encourages "disciplinary control of the practice of health care rendered by physicians ...," § 12–43.5–101; sets forth the establishment and function of review committees, § 12–43.5–102; and grants members of a review committee immunity from lawsuits arising from review committee activity, § 12–43.5–103(2). The Executive Committee urges us to rely specifically on subsection 12–43.5–103(3), 5 C.R.S. (1985), as the statutory basis for standing. That subsection provides:

> (3) The board of trustees of a hospital and the individual members of a board of trustees shall be immune from suit for damages in a civil action brought by a physician who is the subject of action taken in good faith by such board if the action is based upon recommendations of the review committee; *but nothing in this subsection (3) shall preclude review of the action of a board of trustees.* [emphasis added].

In *Franco v. District Court*, 641 P.2d 922 (Colo.1982), we construed the professional review legislation and recognized that it preserved the right of a *physician* to seek review of the hospital governing board's action. There, we stated:

> Judicial review in the context of the peer review statutory scheme means a judicial proceeding in which the court reviews the hospital governing board's final action on the review committee's recommendation and determines whether the governing board exceeded its jurisdiction, abused its discretion, or otherwise acted *in violation of the physician's constitutional or statutory rights,* and the evidence before the court is limited solely to the record as made before the hospital governing board. *See, e.g., Colorado State Board of Medical Examiners v. District Court,* 138 Colo. 227, 331 P.2d 502 (1958); *Board of Adjustment v. Handley,* 105 Colo. 180, 95 P.2d 823 (1939); *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 P.2d 555 (1932).

*Franco,* 641 P.2d at 928 (footnote omitted) (emphasis added). *Franco* contains no indication that the review statute created a right of judicial review in a review committee. Moreover, our reading of the entire statute suggests that the right to seek judicial review of an adverse decision of a governing board belongs only to the physician. We find nothing in the review statute to support the argument that the legislature intended to create a right of judicial review in a professional review committee. If the legislature had intended to create such a right, it would have specifically so provided. We hold, therefore, that the review statute does not grant the Executive Committee the right to seek judicial review of an adverse decision of the hospital's governing board of trustees.

In sum, we conclude that the Executive Committee does not have standing to challenge the ruling of the Trustees and that the trial court erred in considering the claims raised in the Executive Committee's 106 complaint.[8]

8. This is not to say that standing will be foreclosed to subordinate agencies in all situations. For example, where a subordinate agency is charged by statute with an exclusively prosecutorial function, it might be implied that the legislature intended to permit the agency to seek judicial review of adverse decisions.

Accordingly, we remand the case to the district court with directions to vacate its judgment and dismiss the complaint.