**STATE of Colorado, DEPARTMENT OF PERSONNEL; and Gail S. Schoettler, as the Executive Director of the Department of Personnel, Plaintiffs-Appellants,**

v.

**COLORADO STATE PERSONNEL BOARD; Randall C. Mustain-Wood, B.A. "Tony" Arguello, Jan Knoop, and Raymond C. DeLisle, in their capacity as members of the Colorado State Personnel Board; Employees of the State of Colorado in the Key Class of Administrative Clerk Typist; Employees of the State of Colorado in the Key Class of Professional Auditor III; Employees of the State of Colorado in the Key Class of Custodian B; and Colorado Association of Public Employees, as Representatives for the State Employees, Defendants-Appellees.**

**No. 84SA211.**

Supreme Court of Colorado,
En Banc.

July 7, 1986.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Gregory C. Smith, Deputy Atty. Gen., Denver, for defendants-appellees Colorado State Personnel Bd. and Members thereof.

James R. Gilsdorf, Denver, for defendant-appellee Colorado Ass'n of Public Employees.

LOHR, Justice.

The Colorado State Department of Personnel (department) and its director, Gail Schoettler (director), brought suit in Denver District Court against the Colorado State Personnel Board (board) and other defendants, challenging the board's action in overturning part of a decision made by the department and the director. Upon motion by the board, the district court dismissed the case for lack of jurisdiction on the ground that the department and the director did not have standing to sue. The plaintiffs appealed to the Colorado Court of Appeals. We accepted jurisdiction at the request of the court of appeals,[1] and we now affirm the judgment of dismissal.

## I.

The board, the department, and the position of state personnel director were created by article XII, section 14, of the Colorado Constitution. The constitution directs the board to adopt rules to implement the constitutional provisions pertaining to the state personnel system and the laws enacted pursuant to those provisions, while the director is designated as the head of the department and is responsible for the administration of the personnel system. Colo. Const. art. XII, § 14. The State Personnel System Act (Act), §§ 24–50–101 to –402, 10 C.R.S. (1982 & 1985 Supp.),[2] provides a further and more detailed description of the duties and authority of the board, the department and the director.

At the time the present litigation arose, one of the director's duties under the Act was the establishment of a classification plan pursuant to which each position in the personnel system was to be classified on the basis of the duties and responsibilities attendant to that position. §§ 24–50–

---

1. The court of appeals certified the case to this court pursuant to section 13–4–109, 6 C.R.S. (1973), on the grounds that the subject matter of the case has significant public interest and that the case involves legal principles of major significance.

2. At the time of the activities involved in this suit, the Act consisted of the provisions found at sections 24–50–101 to –402, 10 C.R.S. (1982), and the amendments found at ch. 252, secs. 2–6, §§ 24–50–104 to –125, 1983 Colo.Sess.Laws 848, 848–853. The Act was again amended in 1984. Ch. 194, secs. 1–12, §§ 24–50–101 to –125.5, 1984 Sess.Laws 704, 704–714. The Act is presently codified at sections 24–50–101 to –402, 10 C.R.S. (1982 & 1985 Supp.).

104(2), (3), 10 C.R.S. (1982) (amended 1984). The director was required to assign classes of positions to particular pay grades, salary rates or salary ranges, which grades, rates or ranges were to be "at the current level of compensation of comparable employments in other places of public and private employment in appropriate competitive labor markets." § 24–50–104(3)(d), 10 C.R.S. (1982) (amended 1984). In order to determine comparable rates for salaries and fringe benefits prevailing in other places of employment, the director was to conduct an annual "salary and fringe benefit survey" (salary survey). § 24–50–104(5), 10 C.R.S. (1982) (amended 1983 and 1984). Using the results of the survey, the director was to prepare salary recommendations and submit those recommendations to the governor, who in turn was to transmit the salary recommendations to the joint budget committee of the general assembly. § 24–50–104(5)(e), 10 C.R.S. 1982 (amended 1983 and 1984).

The present case arose after the director conducted the 1983 salary survey and, on March 1, 1983, released her salary recommendations for the year beginning on July 1, 1983. At the time when the 1983 salary survey was released, the Act provided that any person "directly affected" by the director's actions with regard to the salary survey could petition the board for review of her pay recommendations. § 24–50–104(5)(c)(II), 10 C.R.S. (1982) (amended 1983 & 1984). By March 22, 1983, the board had received over 1,000 petitions protesting the director's pay recommendations.

On June 7, 1983, the board issued an oral order with regard to three "key classes" involved in the 1983 survey. In part, the board declared that the data collected for the key classes of "Administrative Clerk Typist" and "Professional Auditor III" were invalid and that the data for the key classes of "Administrative Clerk" and "Professional Accountant" should be applied in place of the invalid data. The board also ordered that the food service classes be removed from the key class of "Custodian B" and that a special survey be conducted by June 30, 1983, to determine the appropriate pay recommendation for the food service classes. The director declined to conduct that survey.

The board issued a final, written order on June 30, 1983. That order again stated the board's conclusions that the survey data for Administrative Clerk Typist and Professional Auditor III were invalid and recommended that data for Administrative Clerk and Professional Accountant be substituted in place of the invalid data. The board further concluded that the inclusion of food service workers in the Custodian B key class was unreasonable and that the salaries of food service classes should be maintained at the level then existing, rather than decreased as the director had recommended.

On August 2, 1983, the department and the director filed a complaint in Denver District Court, naming as defendants the board, its individual members, employees in the Administrative Clerk Typist, Professional Auditor III, and Custodian B key classes, and the Colorado Association of Public Employees (CAPE) as representatives for the state employees. In their complaint, the plaintiffs asked the district court to reverse the board's decision as to the three named key classes, claiming that the decision was unsupported by any evidence, in excess of the board's jurisdiction, an abuse of discretion, and in violation of law. The board filed a motion to dismiss the complaint, contending that the court lacked jurisdiction because the plaintiffs had no standing and that the complaint failed to state a claim. CAPE joined in that motion.

On March 16, 1984, the district court granted the motion to dismiss, ruling that the plaintiffs lacked standing to sue because neither the department nor the director had alleged facts that would constitute an actionable injury. It stated that the only persons who might claim injury from the board's decision would be state employees whose salaries were affected by the board's decision. Since no such employees were named as plaintiffs and since

the department and the director were not authorized to sue on behalf of state employees, the district court concluded that the plaintiffs lacked standing. Although our analysis of the standing question differs from that of the district court, we affirm the order dismissing the complaint.

## II.

At the time of the activities involved in this lawsuit, the Act delineated a procedure for review of the director's salary survey. According to section 24–50–104(5)(c)(II), 10 C.R.S. (1982) (amended 1983 & 1984), any person directly affected by the director's action with regard to the salary survey could petition the board for review of the director's action within fifteen working days after the survey was released by the director.[3] In the event that the board agreed to review the director's action, section 24–50–104(5)(c)(II) further provided that

[t]he state personnel director's action may be overturned only if the board finds it to have been arbitrary, capricious, unreasonable, or contrary to rule or law. Following review of the state personnel director's action taken under this paragraph (c), the board may exclude any data it finds invalid and may order resurveys as necessary, but any such resurvey shall be ordered no later than June 1 of each year. The board shall render its final decision by June 30 of each year, which shall take into consideration any such resurveys. When the state personnel director finds that sufficient data exists, he shall relate the data to a pay plan.

Ch. 252, sec. 4, § 24–50–104(5)(c)(II), 1983 Colo. Sess.Laws 849, 849–50.

█ Section 24–50–103(6), 10 C.R.S. (1982), provided for review of the board's action taken pursuant to subsection (5)(c)(II), stating that "[a] decision of the board shall be subject to review pursuant

to section 24–4–106" of the State Administrative Procedure Act (APA). No other provision of the Act provided for review of the board's action. Thus, section 24–4–106, 10 C.R.S. (1982), the judicial review provision of the APA, established the means, if any, by which the department and the director could seek judicial review of the board's order overturning portions of the director's salary survey. Unless the department and the director had standing to sue for judicial review of the board's decision under section 24–4–106, they could not challenge the board's action in the district court. We conclude that the plaintiffs did not have standing under the APA and, therefore, that the district court correctly dismissed the plaintiffs' complaint.

Subsection (4) of section 24–4–106 states in pertinent part that "any person adversely affected or aggrieved by any agency action may commence an action for judicial review in the district court within thirty days after such agency action becomes effective." Under the facts presented by the present case, neither the department nor the director is a "person," and neither is "adversely affected or aggrieved."

The APA defines "person" to include "an individual, partnership, corporation, association, county, and public or private organization of any character other than an agency." § 24–4–102(12), 10 C.R.S. (1982). An "agency" is "any board, bureau, commission, department, institution, division, section, or officer of the state, except those in the legislative branch or judicial branch and except [certain] state educational institutions ...." § 24–4–102(3), 10 C.R.S. (1985 Supp.). Each of the plaintiffs is an agency, not a person, under the APA and thus has no authority to seek judicial review. *See Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970) (holding, before the APA definition of "person" was amended to include "county," that the board of county commission-

**3.** The Act has since been amended to eliminate any means of review of the salary survey. § 24–50–104(5)(g)(I), 10 C.R.S. (1985 Supp.) ("The salary survey and fringe benefit recommendations of the state personnel director as transmitted to the governor and the general assembly shall not be appealable.").

ers of Dolores County could not sue the state agency that had ordered reappraisals of real property in Dolores County in connection with valuation for ad valorem taxation because the board of county commissioners was not a person under the APA and did not otherwise have authority to sue under statute or constitution).

■ The plaintiffs argue that despite the specific reference to "person" in section 24–4–106(4), the clear intent of the section is to provide judicial review not only to persons but also to "parties," which, according to the definition in section 24–4–102(11), 10 C.R.S. (1982), includes agencies. To support their argument, the plaintiffs cite subsection (1) of section 24–4–106 which states that "[i]n order to assure a plain, simple, and prompt judicial remedy to persons or parties adversely affected or aggrieved by agency actions, the provisions of this section shall be applicable." Subsection (1) is a general statement of the purpose of the entire judicial review provision of the APA, a provision that contains many subsections and deals with various aspects of the review process. There is no reason to regard the words found in this general statement as expressing the "clear intent" of the legislature with regard to who can bring an action for judicial review when subsection (4), the subsection that describes who may commence such an action and delineates the steps to be followed by that entity, repeatedly refers to the defined term "person."

■ In addition to failing to qualify as "persons" who may obtain judicial review under the APA, the department and the director are without standing to bring suit because they failed to allege any facts in their complaint that, if true, would establish that they were adversely affected or aggrieved by the board's action. *See* § 24–4–106(4), 10 C.R.S. (1982). To have standing under the APA, the plaintiffs must allege that they have "sustained an injury in fact to an interest which, as a matter of law, is entitled to legal protection under [the Act]." *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commis-*

*sion*, 620 P.2d 1051, 1057 (Colo. 1980). The plaintiffs' complaint in the instant case, however, contains little more than their contention that the board acted improperly. It does not state how the board's allegedly unlawful action injured either the department or the director. The only allegation of injury found in the complaint is the statement that the board's order will result in an increase in pay for employees in the key classes of Administrative Clerk Typist and Professional Accountant III and that payment of such an increase "will cause the State of Colorado irreparable harm." Even assuming that the state would suffer injury as a result of the board-ordered salary change—an assumption that is by no means necessarily warranted—the state cannot be thought of as a plaintiff for standing purposes in this case. As the district court noted in its order dismissing the complaint, the state appears on both sides of this lawsuit since both the department and the board are state agencies.

■ At most, the plaintiffs have alleged that they are injured because the board's action usurped some of the plaintiffs' statutory authority. Such an "injury" does not render the plaintiffs adversely affected or aggrieved, however, since the plaintiffs' interest in having their salary survey decision affirmed upon review by the board was not "an interest which, as a matter of law, is entitled to legal protection" under the Act. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d at 1057. To the contrary, at the time of the board's review in this case, the Act empowered the board to overturn the director's actions concerning the salary survey under certain circumstances, to exclude invalid data, and to order resurveys. Ch. 252, sec. 4, § 24–50–104(5)(c)(II), 1983 Colo. Sess. Laws 849, 849–50.

■ The plaintiffs claim that the board revised the director's salary survey recommendations in a way not authorized by the Act and that if the director cannot challenge such an unauthorized revision, then the board can exercise illegitimate and unassailable authority over the director and

the department. Without deciding whether the board's action in this case was in excess of its authority, we need only note that such action was subject to challenge by a proper party—specifically, any party that could allege injury in fact to a legally protected interest as a result of the board's action. For example, if state employees in another key class were to allege that by increasing the recommended salary for the Administrative Clerk Typist key class, the board's order would result in a decrease in their own salaries, such employees would be able to challenge the board's action as unlawful, an abuse of discretion, or otherwise improper. *See* § 24–4–106(7), 10 C.R.S. (1982). The employees could seek judicial review on their own behalf as "persons adversely affected or aggrieved" by the board's action;[4] neither the department nor the director has the obligation or authority to represent them.[5]

█ A final reason why the department and the director are foreclosed from contending that they were adversely affected or aggrieved by action taken by the board pursuant to its review of the director's salary survey and recommendations arises by virtue of the relationship between the department and the board. As "a subordinate official or agency" the department and the director lack "standing [under the APA] to challenge a decision of a superior official or coordinate board or tribunal." *Iowa Department of Revenue v. Iowa State Board of Tax Review,* 267 N.W.2d

675, 678 (Iowa 1978). In the recent case of *Ad Hoc Executive Committee v. Runyan,* 716 P.2d 465 (Colo. 1986), a hospital's medical review committee brought an action under C.R.C.P. 106(a)(4) to challenge the reversal of one of its decisions by the hospital's board of trustees. We held that the review committee did not have standing to seek relief because the committee was subordinate to the board in the decisionmaking process and had no statutory authority to challenge the decision of a superior agency. *Ad Hoc* relied on our analysis in *Martin v. District Court,* 191 Colo. 107, 550 P.2d 864 (1976), in which we held that a county board of social services did not have standing to challenge a decision of the state department of social services because the county board was not an adversely affected or aggrieved party[6] within the meaning of section 24–4–106 of the APA. *Ad Hoc Executive Committee v. Runyan,* 716 P.2d at 468–69. We reaffirmed the rule espoused in *Martin* that "[i]n the absence of an express statutory right, a subordinate state agency ... lacks standing or any other legal authority to obtain judicial review of an action of a superior state agency...." *Id.* at 469 (quoting *Martin v. District Court,* 191 Colo. at 109, 550 P.2d at 866). *See also Iowa Department of Revenue v. Iowa State Board of Tax Review,* 267 N.W.2d at 680 (holding that because the department of revenue is subordinate to the board of tax review in the decision-

**4.** The plaintiffs argue that employees whose salaries might have changed as a result of the board's order do not have knowledge of the salary survey process and would not have known that they were adversely affected or aggrieved until the salary recommendations were implemented, long after the thirty-day time limit for filing an action for judicial review had passed. *See* § 24–4–106(4), 10 C.R.S. (1982). We see no reason to believe that state employees are unaware of decisions affecting their salaries or incapable of establishing a procedure by which they can monitor such decisions.

**5.** The plaintiffs also argue that they have standing to assert the rights of others not before court under the third party standing doctrine recognized in *Augustin v. Barnes,* 626 P.2d 625 (Colo.1981). Although *Augustin* does provide

for third party standing under certain circumstances, it does so only in an action in which the constitutionality of a statute or regulation is assailed, and it makes clear that a "litigant must initially show injury in fact to himself caused by the application of the statute or regulation." 626 P.2d at 628. Since neither of these prerequisites is satisfied here, *Augustin* has no application in the present case. *Cf. Board of County Commissioners v. Love,* 172 Colo. at 126–27, 470 P.2d at 863 (in absence of legislation, boards of county commissioners have no authority to sue as representatives of the taxpayers of their respective counties).

**6.** During the period of time relevant to our decision in *Martin,* § 24–4–106, 10 C.R.S. (1973), provided for review of agency action by an adversely affected or aggrieved "party."

making process, the department is not an adversely affected or aggrieved party having standing to petition for judicial review of the board's order reversing a decision of the department).

The rule that a subordinate official or agency lacks standing to sue a superior official or tribunal applies to this case if the relationship between the department and the board can be construed as one between a subordinate agency and its superior. We conclude that for the purpose of review of the director's salary survey process and recommendations, the board was superior to the department and the director. The plain words of section 24–50–104(5)(c)(II), as it read at the time of the 1983 salary survey, support this conclusion since that section subjected the director's salary survey and recommendations to review by the board. Further support comes from the fact that although the board and the department are "distinct entities with separate powers and responsibilities," *Colorado Association of Public Employees v. Lamm,* 677 P.2d 1350, 1355 (Colo. 1984), the director is "governed by the rules promulgated by the [b]oard under its constitutional authority," *id.* at 1355. *See also* § 24–50–104(2)(a), 10 C.R.S. (1982) (providing that the "director, *with the approval of the board,* shall establish a classification plan under which [certain state] employees shall be placed" (emphasis added)); § 24–50–104(3)(b), 10 C.R.S. (1982) (providing that the director shall allocate positions to classes "[s]ubject to the rules of the board"). Therefore, because the actions of the department and the director with regard to the Act's salary survey provisions were subject to the board's review, the department and the director were in a position subordinate to that of the board and lacked standing under the APA to challenge the board's partial reversal of the 1983 salary recommendations.

### III.

■ The plaintiffs assert that even if they lacked standing under the APA, they could still challenge the board's order un-

der C.R.C.P. 106(a)(4). C.R.C.P. 106(a)(4) at the time of commencement of this action provided that relief may be obtained in the district court "[w]here an inferior tribunal ... exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy, and adequate remedy." This rule does not endow the plaintiffs with standing in the present case.

C.R.C.P. 106(a)(4) expressly states that it applies where "there is no plain, speedy and adequate remedy" for an abuse of discretion on the part of an inferior tribunal. The Act, however, did provide a plain, speedy and adequate remedy for an abuse of discretion by the board; it provided that review of the board's decisions could be had pursuant to the APA. The reason that the plaintiffs could not obtain review of the board's decision was not that no means of adequate review existed, but that the plaintiffs were not the proper parties to take advantage of the review provided by the Act. C.R.C.P. 106(a)(4) says nothing about conferring standing upon persons or parties who would not otherwise have it. Instead, it supplies a means of reviewing a decision that would not otherwise be reviewable in a "plain, speedy and adequate" manner, even by persons or parties who can allege the facts necessary to establish standing. Because the Act provided for review pursuant to the APA, the reliance of the director and the department on C.R.C.P. 106(a)(4) as a means of reviewing the board's decision is misplaced. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d at 1055 (discussing plaintiffs' motion to amend the pleadings to substitute section 24–4–106 of the APA for "erroneous reference" to C.R.C.P. 106(a)(4) as grounds for review.)

The judgment of the district court is affirmed.